IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date: March 2, 2017

**NO. 34,388**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**WALTER ERNEST BROWN,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Briana H. Zamora, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**GARCIA, Judge.**

{1}    The State of New Mexico appeals the dismissal of Defendant Walter Brown's case on the grounds that Defendant's constitutional right to a speedy trial was violated by the forty-two-month delay in the prosecution of his case. We conclude that each of the four *Barker* factors weigh in Defendant's favor. *See Barker v. Wingo*, 407 U.S. 514, 530-32 (1972). Accordingly, we affirm the district court's dismissal.

**BACKGROUND**

{2}    Defendant was arrested on May 26, 2011, and charged with the murder of James Moore (Victim), whose death occurred during an incident that took place on May 13, 2011. Defendant, an individual with an intelligence quotient (IQ) of approximately seventy, was asked by his friend, Rebecca Duran (Duran), to accompany her to a home she had been staying at to get her belongings. Defendant, Duran, and a friend arrived at the home to find it locked, and after no one came to the front door the group entered through a sliding glass door in the rear of the house. Once inside, they were confronted by Victim. An altercation ensued, Victim pushed Defendant's friend, and Defendant fatally stabbed Victim once in the heart with a pocket knife.

{3} To avoid a repetitious discussion of the pretrial events, we discuss the events in detail here and refer to them more generally in our speedy trial analysis below. Defendant's case was joined with the cases of three other individuals charged as a result of the stabbing incident. Defendant was indicted and charged with one count of second degree murder, pursuant to NMSA 1978, Section 30-2-1(B) (1994), or the lesser included offense of voluntary manslaughter, pursuant to NMSA 1978, Section 30-2-3(A) (1994), or in the alternative, one count of first degree felony murder, pursuant to Section 30-2-1(A)(2); seven separate counts of conspiracy, pursuant to NMSA 1978, Section 30-28-2 (1979), including numerous alternative theories; one counts of aggravated battery, pursuant to NMSA 1978, Section 30-3-5(A), (C) (1969), one count of aggravated burglary, pursuant to NMSA 1978, Section 30-16-4(A) (1963); and two counts of tampering with evidence, pursuant to NMSA 1978, Section 30-22-5 (2003). Defendant's bond was set at $250,000. Defendant remained in custody for thirty-three months after his arrest until our Supreme Court addressed Defendant's appeal of his pretrial conditions of release. *See State v. Brown*, 2014-NMSC-038, ¶ 1, 338 P.3d 1276.

{4} Defense counsel made his first appearance on June 28, 2011, and made a written demand for speedy trial on behalf of Defendant. In December 2011 the presiding judge retired, and his position remained vacant until March 2012. Between

April 2, 2012, and April 19, 2012, Defendant and a co-defendant each exercised one peremptory excusal. Trial was set before another district court judge to commence on March 25, 2013.

{5} During the eleven-month period from April 20, 2012 to March 19, 2013, the State asserted that it was "still working on the case some, but not as much." During this period, Defendant made a plea offer. The State took several months to review the plea offer and eventually made a counter-offer. On February 12, 2013, the district court moved the trial to April 29, 2013, to accommodate the joined cases. On March 19, 2013, after plea negotiations stalled, Defendant filed a motion to sever his case from the co-defendants. In response, the State filed a motion to continue the April 29, 2013, trial setting. The State also claimed some confusion and stated that, while it did not oppose the severance motion, it would have retained the March 25, 2013, trial setting had it known of Defendant's intent to sever his case from the co-defendants.

{6} With the April 2013 trial continued, the parties resumed preparations and proceeded to file and address various motions, including Defendant's motion to review his conditions of release. At a hearing in July 2013, defense counsel argued its position regarding the review of Defendant's conditions of release and detailed Defendant's personal situation, including informing the district court that there were two jobs available to Defendant. Defendant also asked the district court to interview

3

or ask questions of pretrial services personnel who apparently supported Defendant's position and were present in court. The district court granted Defendant's motion to sever but denied Defendant's motion to review conditions of release, citing only the "nature of the allegations" as the basis for its denial. *See Brown*, 2014-NMSC-038, ¶¶ 7, 48.

{7} Following the July 15, 2013 hearing, the parties continued their preparations for the upcoming trial. The district court set a new trial date for November 12, 2013. At the November 5, 2013 docket call, Defendant asked for a continuance for two reasons, (1) because defense counsel was unavailable for trial the next week; and (2) defense counsel believed the status of the pending motions indicated the case was not ready to proceed to trial. The State argued that the motions could be disposed of before the scheduled trial began. The district court granted Defendant's request based on counsel's unavailability.

{8} At a hearing on November 27, 2013, the district court considered the outstanding motions but did not rule on them until March 20, 2014. On December 18, 2013, the district court held a second hearing to review Defendant's pretrial conditions of release. The defense again presented evidence detailing the Defendant's suitability for pretrial release. Again, the court denied any changes to Defendant's pretrial conditions of release based solely on the nature of one of the allegations—a

first degree murder charge. Under Rule 12-204 NMRA, Defendant appealed the denial of his motion to amend his conditions of release. On February 19, 2014, our Supreme Court heard Defendant's appeal and ordered that the Defendant be released on nonmonetary conditions pending trial. *See Brown*, 2014-NMSC-038, ¶¶ 11, 55.

{9} At the presentment hearing held on March 20, 2014, the presiding judge appeared confused as to why the hearing had been scheduled and did not seem to remember the issues, arguments, or matters that he took under advisement at the November 27, 2013 hearing. After the presentment hearing, the parties expressed concern regarding the district court judge's ability to continue to preside over the case. The parties filed a joint motion stipulating to the appointment of a new presiding judge. The motion was eventually granted, and a new judge was appointed on July 24, 2014. The former presiding judge later publicly acknowledged his Alzheimer's disease diagnosis.

{10} Also following the March 20, 2014 presentment hearing, Defendant filed a motion to dismiss on speedy trial grounds. The newly appointed presiding judge denied this motion on September 30, 2014. The district court found that, although three of the *Barker* factors weighed in Defendant's favor, Defendant had not shown sufficient prejudice. The district court further recognized that because no transcript was provided from our Supreme Court's hearing on the appeal of Defendant's motion

to amend his conditions of release, the district court could not "determine whether the fact of pretrial incarceration itself was actual prejudice."

{11} Our Supreme Court released the *Brown* opinion on November 6, 2014, and one day later, Defendant filed a notice of correction and supplemental authority alerting the district court to the *Brown* opinion. *See* 2014-NMSC-038. After reviewing Defendant's supplemental pleadings and the *Brown* opinion, the district court granted Defendant's speedy trial motion for dismissal. After a total delay of forty-two months, the order dismissing the case was entered on November 25, 2014. The State filed a timely appeal.

**DISCUSSION**

**A.    General Principles and Standard of Review**

{12} The Sixth Amendment of the United States Constitution, as applied to the states by the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" *See State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387 (internal quotation marks and citation omitted). The New Mexico Constitution offers similar protection and provides that "[i]n all criminal prosecutions, the accused shall have the right to . . . a speedy public trial." N.M. Const. art. II, § 14. This right recognizes that "there is a societal interest in bringing an accused to trial" and "[t]he heart of the right . . . is preventing prejudice

to the accused." *Garza*, 2009-NMSC-038, ¶ 12.

{13}     Our Supreme Court adopted the United States Supreme Court's balancing test articulated in the *Barker* decision. *See Garza*, 2009-NMSC-038, ¶ 13. The United States Supreme Court identified four factors to be weighed by the court in analyzing a defendant's claim: (1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the actual prejudice to the defendant caused by the delay. *Id.* "Each of these factors is weighed either in favor of or against the [s]tate or the defendant, and then balanced to determine if a defendant's right to a speedy trial was violated." *State v. Spearman*, 2012-NMSC-023, ¶ 17, 283 P.3d 272. "[T]he factors have no talismanic qualities, and none of them are a necessary or sufficient condition to the finding of a violation of the right [to a] speedy trial." *Id.* ¶ 18 (alteration, internal quotation marks, and citation omitted). "Rather they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* (internal quotation marks and citation omitted). In our review of a speedy trial ruling, this Court must "give deference to the district court's factual findings, but we review the weighing and the balancing of the *Barker* factors de novo." *Spearman*, 2012-NMSC-023, ¶ 19 (alteration, internal quotation marks, and citation omitted); *State v. Lujan*, 2015-NMCA-032, ¶ 10, 345 P.3d 1103.

**B.    Discussion and Weighing of the Factors**

**1.    Length of Delay**

{14}    The "length of delay" factor serves a dual purpose when analyzing a speedy trial violation. *See State v. Serros*, 2016-NMSC-008, ¶ 22, 366 P.3d 1121. First, it acts as a threshold triggering mechanism used to determine whether the delay is "presumptively prejudicial" so as to continue with a full speedy trial analysis. *Id.* Second, it is the first independent *Barker* factor that must be addressed to determine whether a defendant's speedy trial rights have been violated. *See Serros*, 2016-NMSC-008, ¶ 22. If the delay crosses the "presumptively prejudicial" threshold, a speedy trial analysis is warranted. *Id.* A delay is presumptively prejudicial if the delay exceeds "[twelve months] for a simple case, [fifteen] months for a case of intermediate complexity, and [eighteen] months for a complex case." *Id.* The parties agreed that this case was complex, and the State also agreed that the delay of forty-two months exceeded the eighteen-month benchmark and triggered a full speedy trial analysis.

{15}    Evaluation of the length of delay factor is independent of the remaining three *Barker* factors and may be found in favor of the defendant regardless of the fault of the parties when addressing the reasons for delay. *See Serros*, 2016-NMSC-008, ¶ 26. "A delay that crosses the threshold for presumptive prejudice necessarily weighs in

8

favor of the accused; the only question is, how heavily?" *Id.* As the delay increases, so does the weight of this first factor in favor of the defendant and against the state. *See id.* ¶ 24. "A delay that scarcely crosses the bare minimum needed to trigger judicial examination of the claim is of little help to a defendant claiming a speedy trial violation." *Id.* ¶ 26 (internal quotation marks and citation omitted). "[A]n extraordinary delay . . . weighs heavily in favor of [the] defendant[.]" *Id.*

{16} The district court found that the combination of the forty-two-month delay and the parties' agreement that this was a complex case warranted a finding that this first *Barker* factor weighed in favor of Defendant. However, the district court did not determine how much weight to assign to this first factor. We shall now address the weight to be assigned to the forty-two-month delay as part of our de novo review. *See Spearman*, 2012-NMSC-023, ¶¶ 19, 24.

{17} Defendant's forty-two-month delay—the time period from the date of his arrest in May 2011 to the date of the dismissal in November 2014—extended twenty-four months past the presumptively prejudicial threshold of eighteen months for a complex case. The additional twenty-four-month delay is more than double that of the presumptively prejudicial time for a complex case. Based upon a review of our appellate courts' authorities addressing this issue, we conclude that the delay of forty-two-months weighs heavily in Defendant's favor. *See Serros*, 2016-NMSC-008, ¶ 24

(holding that a fifty-one-month delay in a case that was either complex or of intermediate complexity was "extraordinary, and therefore it weigh[ed] heavily in [the d]efendant's favor"); *see also State v. Taylor*, 2015-NMCA-012, ¶¶ 7, 9, 343 P.3d 199 (holding that a twenty-four-month delay in a simple case weighed heavily against the state); *State v. Vigil-Giron*, 2014-NMCA-069, ¶¶ 19-20, 65, 327 P.3d 1129 (agreeing with the district court's analysis and determination that an additional eighteen-month delay beyond the presumptively prejudicial threshold in a complex case weighed heavily against the state); *State v. Fierro*, 2012-NMCA-054, ¶ 36, 278 P.3d 541 (holding that a fifty-five-month delay in a case of intermediate complexity weighed heavily in the defendant's favor); *State v. Stock*, 2006-NMCA-140, ¶¶ 15,18, 140 N.M. 676, 147 P.3d 885 (holding that a forty-two-month delay in a simple case weighed heavily in the defendant's favor). *But see State v. Steinmetz*, 2014-NMCA-070, ¶¶ 6, 65, 327 P.3d 1145 (holding that a twenty-eight-month delay beyond the presumptively prejudicial threshold in a case of intermediate complexity only weighed moderately against the state).

**2.    Reasons for Delay**

{18}    "Closely related to [the] length of delay is the reason the government assigns to justify the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). These reasons may either lesson or increase the prejudice to the

defendant caused by the delay. *Id.* Our courts have recognized three types of delay that may be attributable to the state and one type attributable to the defense. First, "intentional delay" that is a deliberate attempt to delay prosecution of the case in order to hamper the defense. *Id.* ¶ 26. This type of delay weighs heavily against the state. *Id.* Second, is "negligent or administrative delay." *Id.* This type of delay weighs more lightly against the state, but "it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Id.* (internal quotation marks and citation omitted). Additionally, as the length of the delay increases, this type of delay begins to weigh more heavily against the state. *Id.* Third, are various types of appropriate delay. *Id.* ¶ 27. These types of delay would be justified for "valid reason[s], such as a missing witness," which are neutral and do not weigh against the state. *Id.* The final type of delay is delay caused by the defense and this type of delay weighs against the defendant. *See Serros*, 2016-NMSC-008, ¶ 29. The complicated circumstances of this case require that we analyze each period of delay separately.

**a.     May 26, 2011 to December 2011 - Seven Months of Neutral Delay**

{19}     Both Defendant and the State agree that from May 26, 2011 when Defendant was arrested, until December 2011, the case was proceeding normally toward trial. These seven months, are therefore categorized as appropriate, neutral delay and do

not weigh against either party. *See State v. Valencia*, 2010-NMCA-005, ¶ 18, 147 N.M. 432, 224 P.3d 659 ("[P]eriods of time considered 'inevitable' and periods during which the case is moved 'toward trial with customary promptness' are not to be weighed against the [s]tate.").

**b.      December 2011 to March 2012 - Three Months in Defendant's Favor**

{20}      In December 2011 the judge assigned to Defendant's case retired and the position remained vacant until March 2012. Therefore, this period necessarily weighs in favor of Defendant as administrative delay. *See Garza*, 2009-NMSC-038, ¶ 29 (considering the "unavailability of judges" as negligent and weighed slightly in favor of the defendant).

**c.      April 2, 2012 to April 19, 2012 - Seventeen Days in the State's Favor**

{21}      From April 2, 2012 to April 19, 2012, Defendant and a co-defendant excused two assigned judges. Defendant concedes that this seventeen-day period should weigh in favor of the State. Considering Defendant was merely exercising a recognized statutory right to excuse a judge, we weigh this delay slightly in the State's favor. *See* Rule 5-106 NMRA.

**d.      April 20, 2012 to March 19, 2013 - Eleven Months in Defendant's Favor**

{22}      From April 20, 2012 to March 19, 2013, the parties were engaged in plea negotiations and the State conceded it was not working on the case "as much."

Despite this, the State argues that this period should not be weighed against them. While plea negotiations generally should not be weighed against either party in a speedy trial analysis, *State v. Maddox*, 2008-NMSC-062, ¶ 24, 145 N.M. 242, 195 P.3d 1254, *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 46-47, plea negotiations are not an absolute excuse for the delay of a prosecution and "unsuccessful plea negotiations do not constitute a valid reason for suspending the defendant's right to a speedy trial." *Id.* ¶ 25. Here, the State's own admission "that [it] was not working the case[,]" as well as the fact that it took several months to review Defendant's plea offer, despite Defendant's repeated reminders and requests, appear to confirm that the State was not attentively working on Defendant's case. Accordingly, we weigh this period of time slightly in favor of Defendant as neglect or negligent delay. *See State v. Lujan*, 1991-NMCA-067, ¶ 14, 112 N.M. 346, 815 P.2d 642 (holding that plea negotiations prolonged by delays in response by the prosecution "did not constitute a valid reason for suspending the time period with regard to [the] defendant's right to a speedy trial" and weighing this period slightly against the state); *see also State v. Moreno*, 2010-NMCA-044, ¶ 29, 148 N.M. 253, 233 P.3d 782 (holding that the state's repeated failure to schedule witness interviews, despite prodding by the defendant constituted bureaucratic indifference).

**e.      March 19, 2013 to July 15, 2013 - Four Months of Neutral Delay**

{23}     The delay from March 19, 2013 to July 15, 2013, stemmed from miscommunication between the parties regarding the severance of Defendant's case from co-defendants. The State moved to continue Defendant's March 25, 2013 trial setting, believing that the case was to be tried with the co-defendants. However, Defendant had moved to sever on March 19, 2013. Additionally, both the State and Defendant filed substantive motions with the district court that were not ruled on until July 15, 2013. Accordingly, we weigh this time neutrally because of the miscommunications between the parties and the actions taken in an attempt to move the case forward in a customary fashion. *See Garza*, 2009-NMSC-038, ¶ 27 (recognizing that a delay that is justified by a valid reason is appropriate and will be weighed neutrally); *State v. Palacio*, 2008-NMCA-074, ¶¶ 21, 23, 146 N.M. 594, 212 P.3d 1148 (recognizing that the parties' confusion in an Interstate Agreement on Detainers Act case would be one basis to justify weighing the period of delay neutrally).

**f.      July 15, 2013 to November 5, 2013 - Three and One Half Months of Neutral Delay**

{24}     This period is also weighed neutrally. Both parties were appropriately preparing for trial. The district court held hearings and ruled on various motions filed by the parties. The State filed a statement of facts, completed its psychological exam

14

of Defendant, and Defendant attempted to convince the State to reform the indictment and filed a motion to exclude the State's psychological exam. The record supports the position that both parties were moving the case forward in a customary manner.

**g.      November 5, 2013 to March 20, 2014 - Four and One Half Months in the State's Favor**

**{25}** At the November 5, 2013 docket call, Defendant requested that the November 12, 2013 trial setting be continued. Defendant gave two reasons for the continuance: (1) three pending motions needed to be heard and ruled upon before the trial could begin; and (2) defense counsel would be unavailable due to a scheduling conflict. The State argued that the motions could be handled before the November 12, 2013 trial setting, and that the trial could take place as scheduled. Defendant disagreed. Instead of being disposed of quickly, the district court took the motion under advisement. A ruling on the motion was not issued until March 20, 2014. Trial was continued until March 31, 2014, due to defense counsel's unavailability. Accordingly, we weigh this period of delay slightly in favor of the State.

**h.      March 20, 2014 to July 24, 2014 - Four Months in Defendant's Favor**

**{26}** At the March 20, 2014 presentment hearing, both parties developed concern regarding the judge's ability to continue presiding over this case and filed a stipulated joint motion for a new presiding judge. A new judge was assigned to the case on July 24, 2014. The previous judge later resigned from the bench and publicly

15

acknowledged that he received an Alzheimer's diagnosis. We weigh this period slightly against the State as administrative delay due to the unavailability of the presiding judge due to illness and the lack of any progress made by the court until a new judge was assigned.

**i.      July 24, 2014 to November 25, 2014 - Four Months of Neutral Delay**

{27}      On August 22, 2014, the new judge held a hearing on Defendant's pending motion to dismiss on speedy trial grounds. An order denying Defendant's motion was entered on September 30, 2014. The district court then made appropriate preparations for trial. However, our Supreme Court issued an opinion on Defendant's appeal of his bond amount and conditions of release on November 6, 2014. *See Brown*, 2014-NMSC-038, ¶ 1. The next day, Defendant filed a supplemental authority for reconsideration of the previous denial of his speedy trial motion. The district court reconsidered Defendant's speedy trial motion and dismissed the case on November 25, 2014. Given that the district court and parties were proceeding with customary promptness during this time, we weigh this period of delay neutrally.

**j.      Overall Determination of the Reasons for Delay**

{28}      We conclude that forty-two months of delay occurred in this case. Approximately five months weigh in favor of the State, approximately eighteen months weigh in favor of Defendant, and approximately nineteen months weigh as

16

neutral delay. The State is the party responsible for the most delay and the amount of delay caused by the State equals the eighteen-month presumptively prejudicial time period. As a result, we concluded that the reasons for delay weigh slightly to moderately in favor of Defendant.

**3.      Assertion of the Right**

{29}      "[T]he timeliness and vigor with which the right [to a speedy trial] is asserted may be considered as an indication of whether a defendant was denied [the right] to [a] speedy trial over his objection or whether the issue was raised on appeal as [an] afterthought." *Garza*, 2009-NMSC-038, ¶ 32. Accordingly, we consider Defendant's assertion or failure to assert his right to a speedy trial as a factor in determining whether Defendant was deprived of that right. *See id.* ¶ 31. In this consideration, "[the appellate courts] assess the timing of the defendant's assertion and the manner in which the right was asserted." *Id.* ¶ 32. "[W]e accord weight to the 'frequency and force' of the defendant's objections to the delay" and "analyze the defendant's actions with regard to the delay." *Id.* The individual circumstances of each case must be closely analyzed. *Id.* ¶ 33.

{30}      In ruling on Defendant's initial motion to dismiss on speedy trial grounds, the district court found that Defendant "clearly and repeatedly asserted his right to a speedy trial." We agree. Throughout the forty-two-month pretrial process, the district

17

court recognized that Defendant made no fewer than twelve assertions in filed pleadings, and also raised the assertion orally in open court. After his initial demand for speedy trial on June 28, 2011, Defendant made demands for speedy trial on June 4, 2013, and a renewed request on June 18, 2013. He again asserted his speedy trial right in an *ex parte* notice of delay on October 7, 2013. He cited ongoing delay in two motions filed October 28, 2013. On November 4, 2013, Defendant asserted that "the delays had infringed on his speedy trial rights and requested that all further delays be weighed against the State for speedy trial purposes." Defendant also mentioned his speedy trial rights in two response briefs filed on November 15, 2013 and November 21, 2013. He again asserted his right in a motion for a presentment hearing on January 30, 2014, and finally filed his formal motion to dismiss on speedy trial grounds on March 20, 2014.

{31}     Although the district court recognized Defendant's numerous assertions of his right to a speedy trial, the district court weighed this factor only nominally in his favor, finding that Defendant contributed to the delay. The court referenced Defendant's November 5, 2013 continuance request, and several motions that could have been filed earlier to avoid delay. The court further likened Defendant's conduct to the dilatory acts recognized as "gamesmanship." *See Steinmetz*, 2014-NMCA-070, ¶ 62 (commenting that because the defendant "invoked his right to a speedy trial in

18

words while simultaneously operating in a dilatory manner leads us to conclude that [the d]efendant's assertions of the right were at best nominal and at worst an act of gamesmanship").

{32} We partially disagree with the district court. Defendant's "clear and repeated" assertions throughout the entirety of his case weigh this factor more than nominally in his favor. *See Serros*, 2016-NMSC-008, ¶ 77 (holding that three pro-forma assertions of the right to speedy trial are entitled to some weight in favor of the defendant); *see also Garza*, 2009-NMSC-038, ¶ 34 (holding that a single demand for a speedy trial, "tucked within the waiver of arraignment and not guilty plea," was sufficient in combination with no evidence that the defendant had acquiesced to the delay and weighed this factor slightly in the defendant's favor). The question shifts to the amount of weight that should be assigned to this factor. Though the district court weakened the weight of Defendant's assertions because Defendant contributed to the delay, we hold that weighing of this factor nominally in Defendant's favor was not appropriate and we do not recognize any dilatory acts of gamesmanship in this record. Because it is not critical to the final outcome in this case, we weigh this factor clearly in Defendant's favor, but not to the point of weighing strongly in his favor.

**4.    Prejudice**

{33} "The 'heart' of the speedy trial right 'is preventing prejudice to the accused.' "

*Lujan*, 2015-NMCA-032, ¶ 20 (quoting *Garza*, 2009-NMSC-038, ¶ 12). Prejudice to a defendant during a speedy trial analysis is determined through an investigation into conditions that may arise from lengthy pretrial delays. The right to a speedy trial seeks to "prevent oppressive pretrial incarceration[,] . . . minimize anxiety and concern of the accused[,] . . . and . . . limit the possibility that the defense will be impaired." *Serros*, 2016-NMSC-008, ¶ 84 (internal quotation marks and citation omitted); *Garza*, 2009-NMSC-038, ¶ 35. Generally, the defendant has the burden of proof to show "particularized prejudice." *Serros*, 2016-NMSC-008, ¶ 86 (internal quotation marks and citation omitted). Because "some degree of oppression and anxiety is inherent for every defendant who is jailed awaiting trial," the defendant bears the burden to establish that "the pretrial incarceration or the anxiety suffered [by the defendant] is undue." *Id.* ¶ 89 (alterations, internal quotation marks, and citation omitted). However, "if the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated." *Id.* ¶ 86 (internal quotation marks and citation omitted). Because this Court has determined that the reasons for the delay factor did not weigh heavily in Defendant's favor, Defendant must establish the prejudice factor in order to show that his right to a speedy trial has been violated.

20

*See id.*

{34} The first interest examined in the prejudice portion of the speedy trial analysis is the oppressive nature of the pretrial incarceration. Whether the pretrial incarceration is oppressive "depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Id.* ¶ 89 (internal quotation marks and citation omitted). "It cannot be denied that two-and-one-half years of pretrial incarceration[,] one's life on indefinite hold, waiting for one's trial to commence—is very substantial prejudice, of the precise kind that the [s]peedy [t]rial [c]lause was meant to avoid." *Moreno*, 2010-NMCA-044, ¶ 37 (alteration, internal quotation marks, and citation omitted); *compare Serros*, 2016-NMSC-008, ¶ 90 (holding that pretrial incarceration of over four years is "oppressive on its face"), *with Salandre v. State*, 1991-NMSC-016, ¶ 29, 111 N.M. 422, 806 P.2d 562 (holding that bond restrictions for one month were not oppressive).

{35} Defendant was incarcerated for thirty-three months, starting with his arrest on May 26, 2011, until our Supreme Court ordered his release on nonmonetary bond on February 19, 2014. *See Brown*, 2014-NMSC-038, ¶¶ 2, 55. Our Supreme Court held that the district court failed in its responsibility to follow Rule 5-401 NMRA, providing that the court take into account not only "(1) the nature and circumstances

21

of the offenses charged[, but also] (2) the weight of the evidence against the person[,] (3) the history and characteristics of the person[,] . . . (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release[,] and (5) any other facts tending to indicate the person is likely to appear" at all court proceedings. *Brown*, 2014-NMSC-038, ¶ 39. Our Supreme Court further held that the district court's decision was "arbitrary and capricious and that the [district] court abused its discretion," reasoning that "[b]ail is not pretrial punishment and is not to be set solely on the basis of an accusation of a serious crime." *Id.* ¶¶ 47, 52. A charged offense "does not permit the judge to put a price tag on a person's pretrial liberty," and "[s]etting money bail based on the severity of the crime leads to either release or detention, determined by a defendant's wealth alone." *Id.* ¶ 52.

{36}     As thirty-three months of incarceration occurred in this case—more than "two-and-one-half" years, a length of incarceration cited to be "very substantially prejudicial" in *Garza*—we conclude that Defendant was substantially prejudiced by his pre-trial incarceration. 2009-NMSC-038, ¶ 35. Other mitigating factors presented by the State, including that Defendant finished his high school education, did not suffer reported incidents of violence, and did not receive any behavioral misconduct violations while incarcerated do not sufficiently affect the degree of prejudice suffered as a result of Defendant's extended pretrial incarceration. Because Defendant

22

need not prove both undue pretrial incarceration *and* undue anxiety suffered, but may prove either, a determination of substantial prejudice arising from undue pretrial incarceration is justified in this case. *See Spearman*, 2012-NMSC-023, ¶ 36 ("[W]e weigh this factor in the defendant's favor where the pretrial incarceration *or* the anxiety suffered is undue." (alteration, internal quotation marks, and citation omitted)).

{37}   A speedy trial analysis of prejudice also seeks to "minimize [the] anxiety and concern of the accused." *Serros*, 2016-NMSC-008, ¶ 84 (internal quotation marks and citation omitted); *Garza*, 2009-NMSC-038, ¶ 35. In this case, Defendant lost two jobs during his unlawful incarceration and received only three visits from his family, from whom he had never lived apart, due to financial and travel constraints. After his release from pretrial incarceration, Defendant was not able to secure employment before the case was dismissed. These circumstances would also factor into the level of prejudice suffered by Defendant and support the district court's finding that Defendant suffered prejudice due to his unlawful thirty-three-month period of pretrial incarceration. As a result, we agree that Defendant also established undue anxiety suffered during his thirty-three-months of pretrial incarceration.

{38}   The district court denied Defendant's initial speedy trial motion on September 30, 2014, finding that Defendant did not suffer sufficient prejudice as a result of his

pretrial incarceration. After the publication of the *Brown* decision by our Supreme Court, the district court reconsidered and granted Defendant's motion to dismiss on speedy trial grounds. The district court did not explain its reallocation of the specific weight and heightened prejudice suffered by Defendant as a result of his undue pretrial incarceration, but determined that this *unlawful* pretrial incarceration weighed more heavily in Defendant's favor than it would have otherwise been weighed if such incarceration had been lawfully imposed. Consistent with our Supreme Court's determination that Defendant's unlawful and arbitrary bail "put a price tag on [Defendant's] liberty" and that it should not have been a "pretrial punishment . . . [based] solely on the basis of an accusation of a serious crime[,]" it is equally reasonable for the district court to determine that Defendant's unlawful pretrial incarceration heightened the prejudice factor and can be weighed more heavily in Defendant's favor. *Brown*, 2014-NMSC-038, ¶ 52.

{39} The State argues that because our Supreme Court was only able to consider the denial of Defendant's pretrial release from the time of his appeal, the time that Defendant was *unlawfully* incarcerated was not thirty-three months, but limited to the seven-month period from the time of the district court's denial of Defendant's motion until the Supreme Court's subsequent order of his release. The State asserts that, because seven months is a much shorter time period and "pales in comparison to the

24

possible sentence that Defendant faced on his second degree murder charge[,]" Defendant has not shown prejudice. We disagree.

{40} Our Supreme Court did not recognize that only a portion of Defendant's pretrial incarceration was undue and violated Rule 5-401, but determined that his entire $250,000 bond amount was in error and ordered Defendant's immediate release on nonmonetary conditions. *See Brown*, 2014-NMSC-038, ¶¶ 1, 55. Because Defendant's thirty-three months of pretrial incarceration already demonstrates a substantial degree of prejudice, any additional prejudicial factors would only add to the degree of prejudice suffered. Therefore, even if we were to accept the State's position that Defendant's thirty-three months of illegal pretrial incarceration did not add significantly more prejudice to this analysis, it nevertheless concedes that some heightened level of prejudice occurred. Combining these incarceration factors with the numerous forms of additional anxiety suffered and the illegality of Defendant's nearly three years of incarceration, the district court was entitled to reconsider its previous speedy trial ruling, and reasonably conclude that Defendant suffered undue prejudice from his illegal thirty-three months of pretrial incarceration. We agree and hold that, under these circumstances, Defendant presented substantial evidence to establish that the prejudice factor weighed in his favor, even more than slightly.

{41} One final aspect of the prejudice factor that must be analyzed is "the possibility

that the defense will be impaired." *Serros*, 2016-NMSC-008, ¶ 84 (internal quotation marks and citation omitted). This aspect of prejudice is considered the *most serious* of the three interests protected by the right to a speedy trial, and protects a defendant's ability to adequately defend against the charges filed. *Garza*, 2009-NMSC-038, ¶ 36 (emphasis added). Typical problems associated with this interest include the death or disappearance of a witness or the loss of memory by witnesses. *Id.* To show this type of prejudice, Defendant must show "with particularity what exculpatory evidence would have been offered and that the delay caused the evidence's unavailability." *Serros*, 2016-NMSC-008, ¶ 85 (alterations, internal quotation marks, and citation omitted); *Garza*, 2009-NMSC-038, ¶ 36.

{42} Defendant asserts that his case was prejudiced because he was unable to interview a "critical" witness due to the State's inability to make the witness available. Defendant asserts that when he was finally able to interview the witness, the witness had a "faded memory of the event that happened [on May 13, 2011]." However, Defendant failed to assert what the witness would have testified to had he been interviewed earlier. The district court concluded that "[g]iven the lack of specificity in Defendant's arguments . . . these assertions are speculative . . . and . . . the delay in interviewing" this witness did not impair the defense. We agree. However, the fact that Defendant's case was not further prejudiced by the specific

26

details of a witness's faded memory does not change our overall conclusion that Defendant suffered sufficient prejudice during the forty-two-month delay in this case, thirty-three months of which was illegal pretrial incarceration after the date of his arrest.

**C.     Balancing the Four Factors**

{43}     The length of delay weighs heavily in Defendant's favor. The assertion of the right weighs in Defendant's favor but not heavily in his favor. The reasons for the delay weighs slightly to moderately in favor of Defendant. The undue prejudice suffered as a result of the lengthy delay, the specific anxiety, and the illegality of Defendant's pretrial incarceration all weigh in Defendant's favor. We agree with the district court that none of the *Barker* factors weigh in favor of the State. Therefore, we conclude that the *Barker* factors weigh sufficiently in Defendant's favor to establish a violation of his right to a speedy trial and that the district court appropriately dismissed Defendant's charges on speedy trial grounds.

**CONCLUSION**

{44}     We affirm the district court's order dismissing Defendant's case with prejudice.

{45}     **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**M. MONICA ZAMORA, Judge**

_____
**J. MILES HANISEE, Judge**