This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37134**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**JUSTIN TRUJILLO,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Jeff McElroy, District Judge**

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**Bogardus, Judge.**

**{1}** Defendant Justin Trujillo, charged with aggravated battery, pursuant to NMSA 1978, Section 30-3-5(C) (1969), entered a guilty plea to misdemeanor aggravated battery under Section 30-3-5(B), and reserved his right to appeal the district court's denial of his motion to dismiss based on a violation of his right to a speedy trial. On appeal, Defendant contends the district court erred in failing to dismiss the charges against him on speedy trial grounds and that his right to due process was denied due to preindictment delay. We affirm.

**BACKGROUND**

**{2}** On December 23, 2015, Defendant, along with three other inmates, was involved in an attack on fellow inmate Jonathan Lopez (Victim) while detained at the Taos County Detention Center (the Detention center). Defendant was charged with aggravated battery on January 25, 2016, in magistrate court. The State dismissed the case against Defendant in magistrate court on February 10, 2016. Over the next several months, the jail experienced staff turnovers and some inmates were moved from the facility. On March 1, 2016, Victim filed a tort claim notice against Taos County and employees of the jail, pursuant to the Tort Claims Act, NMSA 1978, § 41-4-16 (1977) in preparation for a civil lawsuit. After the charges in magistrate court were dismissed, Defendant remained in custody on separate charges.

**{3}** On November 10, 2016, a grand jury indicted Defendant on one count of aggravated battery with great bodily harm based on the December 23, 2015, detention center attack on Victim. Three other inmates involved in the attack were indicted separately under the same statute.

**{4}** On March 27, 2017, defense counsel filed a multi-purpose motion in which she entered her appearance and asserted discovery and speedy trial demands. On November 8, 2017, Defendant filed a motion in limine requesting the court to suppress the testimony of a witness and/or to dismiss the case on speedy trial grounds. However, the motion did not contain any speedy trial violation argument or analysis, and the district court refused to consider it. Instead the district court vacated the November 13, 2017 trial setting, and directed Defendant to file a proper motion raising his speedy trial concerns within thirty days.

**{5}** Defendant addressed the *Barker* factors in a subsequent motion, which the district court denied. The district court found the case was of moderate complexity and, because fifteen months had not passed since Defendant was indicted, there was no presumptive violation of Defendant's speedy trial right.

**{6}** On February 7, 2018, Defendant pleaded guilty to misdemeanor aggravated battery, contrary to Section 30-03-05(B) and expressly reserved his right to appeal the district court's denial of his motion to dismiss on speedy trial grounds. Because this is a memorandum opinion and the parties are familiar with the facts of this case, we reserve further discussion of the procedural history of Defendant's case within the context of his speedy trial and due process arguments.

**DISCUSSION**

**I.     Defendant's Right to a Speedy Trial Was Not Violated**

**{7}** The Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution establish an accused's right to a speedy trial. "The heart of the right . . . is preventing prejudice to the accused." *State v. Garza*, 2009-NMSC-

038, ¶ 12, 146 N.M. 499, 212 P.3d 387. To determine whether the right has been violated, New Mexico courts apply the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), to the particular facts and circumstances of the case. *Garza*, 2009-NMSC-038, ¶¶ 11, 13.

**{8}** The *Barker* test consists of four factors: (1) the length of delay in bringing the case to trial; (2) the reasons for the delay; (3) the defendant's assertion of the speedy trial right; and (4) the prejudice to the defendant. *Barker*, 407 U.S. at 530. We consider these factors in light of the prosecution's and the defendant's conduct. *See State v. Smith*, 2016-NMSC-007, ¶ 58, 367 P.3d 420. No one factor is necessary or sufficient for finding a violation of the right; "[r]ather, they are related factors and must be considered together with such other circumstances as may be relevant." *State v. Spearman*, 2012-NMSC-023, ¶ 18, 283 P.3d 272 (internal quotation marks and citation omitted). On review, "we defer to the district court's factual findings that are supported by substantial evidence, but we independently review the record to determine whether a defendant was denied his speedy trial right and we weigh and balance the *Barker* factors de novo." *State v. Flores*, 2015-NMCA-081, ¶ 4, 355 P.3d 81.

## A. Length of Delay

**{9}** Length of delay serves "as a threshold triggering mechanism used to determine whether the delay is 'presumptively prejudicial' so as to continue with a full speedy trial analysis." *State v. Brown*, 2017-NMCA-046, ¶ 14, 396 P.3d 171. A delay is presumptively prejudicial if the delay exceeds "twelve months for a simple case, [or] fifteen months for a case of intermediate complexity[.]" *Id.* (alterations, internal quotation marks, and citation omitted). "If the delay crosses the 'presumptively prejudicial' threshold, a speedy trial analysis is warranted." *Id.* We defer to the district court's finding on the question of complexity "when it is supported by substantial evidence." *State v. O'Neal*, 2009-NMCA-020, ¶ 16, 145 N.M. 604, 203 P.3d 135 (internal quotation marks and citation omitted).

**{10}** In the proceedings below, the parties agreed that Defendant's case was one of "simple complexity." The district court, however, found that this case was intermediately complex. The district court based its finding on a number of factors, including the number of defendants when joinder was initially contemplated, the potential for a civil suit against the County, administrative turnover at the Detention center, the number of witnesses and the amount of videotape evidence to review, and Defendant's allegations of corruption at the Detention center. On appeal, Defendant continues to assert his case was simple, but the State now argues the case was intermediately complex. We agree with Defendant that this was a simple case as we explain below.

**{11}** When determining the complexity of a case, we look to several factors, including "the number and complexity of the charges, the number of witnesses, and whether expert testimony is necessary." *State v. Deans*, 2019-NMCA-015, ¶ 7, 435 P.3d 1280. Simple cases generally require "less investigation and tend to involve primarily police officer testimony during the trial." *State v. Montoya*, 2011-NMCA-074, ¶ 16, 150 N.M.

415, 259 P.3d 820 (internal quotation marks and citation omitted). Cases of intermediate complexity "seem to involve numerous or relatively difficult criminal charges and evidentiary issues, numerous witnesses, expert testimony, and scientific evidence." *Id.*; *see State v. Laney*, 2003-NMCA-144, ¶ 14, 134 N.M. 648, 81 P.3d 591 (noting that cases of intermediate complexity are characterized by difficult or numerous criminal charges and evidentiary issues, numerous witnesses, expert testimony, and scientific evidence).

**{12}** "Although we generally give deference to a district court's characterization of a case's complexity," *State v. Wilson*, 2010-NMCA-018, ¶ 24, 147 N.M. 706, 228 P.3d 490, based on our review of the record, we disagree with the district court's determination here. Defendant was charged with only one count of aggravated battery and the State initially agreed that the case was simple. Although three other defendants were also indicted for aggravated battery arising from the same Detention center attack, and the State initially moved to join these defendants, the State did not ultimately pursue joinder. The State's final witness list contained only six witnesses, and all but one of those witnesses were employed by the Detention center or the 8th Judicial District Attorney's Office. Defendant listed only one additional witness he intended to call. The case involved video evidence to which both parties had access. Neither party identified any expert witnesses to be called at trial and there was no specific scientific evidence identified as necessary for trial.

**{13}** Further, to the extent the district court's finding of intermediate complexity was premised on the potential civil case arising from the Detention center attack, difficulties obtaining Victim's medical records, staff turnover at the Detention center, and Defendant's allegations of corruption in the management of the Detention center, the district court did not explain how these extraneous issues increased the complexity of the case, other than noting that the course of this case was not typical. Nor does the State alert us to any authority to establish that in such circumstances the complexity of a criminal case is increased. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 11129 (noting that appellate courts "will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists").

**{14}** Based on the foregoing—that there was only one charge, the State did not pursue joinder, the parties only intended to call seven witnesses and presented no evidence that their testimony would be conflicting, both parties had access to uncontested available video evidence, there were no significant evidentiary issues, and no expert or scientific evidence was needed—we conclude that this was a simple case. *See Laney*, 2003-NMCA-144, ¶ 15 (holding a case with many stipulated facts but ten witnesses needed to testify on a hotly contested element including three experts was on the "high end of the simple complexity range").

**{15}** As a simple case, the passage of approximately fifteen months from the indictment to the conditional plea agreement exceeds the twelve-month threshold at which we presume prejudice. *See Garza*, 2009-NMSC-038, ¶ 48. Thus, the State has

the burden to show that Defendant's speedy trial right was not violated, *see State v. Hayes*, 2009-NMCA-008, ¶ 9, 145 N.M. 446, 200 P.3d 99, and we continue to a full *Barker* analysis, evaluating the length of delay as our first step. *See Garza*, 2009-NMSC-038, ¶ 23. To evaluate the length of delay, we consider how long the delay stretches beyond "the bare minimum needed to trigger judicial examination of the claim." *Id.* ¶ 24 "[T]he presumption of prejudice to the defendant intensifies over time." *Laney*, 2003-NMCA-144, ¶ 16.

**{16}** Here, the delay was almost three months beyond presumptive prejudice for a simple case. *See Garza*, 2009-NMSC-038, ¶ 48 (stating the benchmark for presumptive prejudice in a simple case is one year). Given that the delay was relatively short, we weigh this factor only slightly against the State. *See Wilson*, 2010-NMCA-018, ¶ 29 (holding a delay of just over five months over the minimum presumption of prejudice in a simple case weighed slightly against the state).

## B.    Reasons for Delay

**{17}** "[C]losely related to the length of delay, is the reason the government assigns to justify the delay." *Id.* ¶ 30. "The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). Courts in New Mexico recognize four reasons for delay. *State v. Samora*, 2016-NMSC-031, ¶ 11, 387 P.3d 230. The first type, "intentional delay," is a "deliberate attempt to delay prosecution of the case in order to hamper the defense," and is weighed heavily against the state. *Brown*, 2017-NMCA-046, ¶ 18. The second type, "negligent or administrative delay," is weighed against the state, but more lightly than intentional delay. *Id.* The weight assessed against the state for "negligent or administrative delay," however, increases as the length of that delay increases. *Id.* The third type, "appropriate delay," which is delay "justified by valid reasons," such as a missing witness, is neutral and does not weigh against the state. *Id.* Finally, delay caused by the defense generally weighs against the defendant. *Id.*

**{18}** Defendant argues all of the delay that occurred here was caused deliberately by the State or was due to negligent or administrative delay that should weigh against the State. The State, on the other hand, contends that five months of delay was administrative delay by the State that should be weighed slightly against the State, seven months of the delay was customary movement towards trial and should weigh neutrally, and the final three months of delay were caused by Defendant's actions and should be weighed against him.

**{19}** Because speedy trial analysis depends on the facts and circumstances of each case, we review the pertinent facts here "to allocate to each side the reasons for the delay and determine the weight we should assign the reasons for the delay." *State v. Gallegos*, 2016-NMCA-076, ¶ 10, 387 P.3d 296. We proceed by analyzing the periods of delay separately.

**November 10, 2016 to April 10, 2017**

**{20}**    Defendant was indicted by a grand jury on November 10, 2016. At the time of his indictment, he was already in custody on other charges. The only action the State took to move the case forward during this time was to file a motion and statement of joinder. The joinder pleadings were not timely filed and eventually the State admitted that it did not intend to pursue joinder.

**{21}**    The State admitted to having administrative difficulties during this time, including significant attorney turnover in the district attorney's office during 2016 and 2017 that led to case backlogs. Moreover, because of administrative turnover, the Detention center did not timely respond to records requests from the district attorney. Once the district attorney obtained relevant records, these records were immediately provided to Defendant. We see nothing to indicate that the delay during this time period was intentional or tactical and we conclude that this delay was negligent or administrative delay. *See Garza*, 2009-NMSC-038, ¶ 29 (noting that an understaffed prosecutor's office and congested dockets fall within the administrative burdens of the criminal justice system and are considered negligent delay). The extent to which negligent delay weighs against the State "depends on the length of delay." *Id.* ¶ 30. Because the negligent delay in this case was five months, it weighs slightly against the State. *See Brown*, 2017-NMCA- 046, ¶ 28 (holding negligent delay amounting to the presumptively prejudicial period weighed slightly to moderately in favor of the defendant); *Garza*, 2009-NMSC-038, ¶ 30 (holding negligent delay that extended one month and six days beyond the threshold to trigger the speedy trial inquiry was negligent but not protracted and weighing the factor slightly in the defendant's favor).

**April 11, 2017 to November 7, 2017**

**{22}**    Over the next seven months, the case progressed in a normal fashion. The parties exchanged discovery, issued subpoenas, and interviewed witnesses. Although defense counsel raised concerns about discovery delays caused by the State, she admitted that her lack of support staff as a sole practitioner and the difficulty traveling between Taos and Albuquerque for trial preparation contributed to the discovery delays.

**{23}**    Because of the discovery issues, the parties agreed to vacate the October 2, 2017 trial setting, and requested that the case be reset on the next available trial docket. The trial was rescheduled for November 13, 2017.

**{24}**    By the November 6, 2017 docket call for the rescheduled trial, the State was prepared to go to trial and defense counsel stated she would be prepared so long as scheduled witness interviews went smoothly.

**{25}**    Based on the foregoing, it is apparent that both parties' trial preparation was proceeding normally during this seven-month period, and we weigh this period of delay neutrally. *See State v. Valencia*, 2010-NMCA-005, ¶ 18, 147 N.M. 432, 224 P.3d 659 ("[P]eriods of time considered 'inevitable' and periods during which the case is moved

'toward trial with customary promptness' are not to be weighed against the [s]tate."). Additionally, the parties agreed to a continuance and given this agreement, we will not weigh this delay against the State. *See Wilson*, 2010-NMCA-018, ¶ 38 (declining to weigh a three-month stipulated extension against the [s]tate). Thus, we conclude that this entire period of delay weighs neutrally.

**November 8, 2017 to December 19, 2017**

**{26}**    On November 8, 2017, Defendant filed a motion in limine requesting the suppression of one witness's testimony, dismissal of the case on speedy trial grounds, or a continuance. The motion did not provide substantive reasoning for any of the three requests and did not include an analysis of the *Barker* factors. In response, the district court vacated the November 13, 2017 trial, and directed Defendant to file a motion to dismiss on speedy trial grounds that included the relevant analysis within thirty days or to notify the court that the defense was waiving its speedy trial violation claim. Defendant timely filed his motion and, after briefing and a hearing, the district court denied Defendant's motion and rescheduled trial for February 5, 2018.

**{27}**    Although consideration of Defendant's motion caused a period of delay, the delay was no longer than was necessary to allow for the issue to be briefed and to schedule a hearing on the matter. The district court and parties proceeded with customary promptness during this time; thus, we weigh this six-week period of delay neutrally. *See Brown*, 2017-NMCA-046, ¶ 27 (holding the period of time during which the judge held a hearing on defendant's motion to dismiss on speedy trial grounds and the court was making appropriate preparations for trial was weighed neutrally).

**December 20, 2017 to February 7, 2018**

**{28}**    After the district court denied the motion, Defendant entered into plea negotiations with the State. At a hearing on January 29, 2018, the parties had a plea agreement ready to present to the court. However, during the hearing, Defendant requested additional terms be added to the agreement. The district court terminated the hearing upon the parties' failure to reach an agreement. A subsequent plea agreement was reached on February 7, 2018. During this seven-week period of delay caused by on-going plea negotiations, the parties continued to move forward with trial preparation.

**{29}**    "Plea negotiations generally should not be weighed against either party in a speedy trial analysis[.]" *Id.* ¶ 22. Despite this, we must "consider the impact of such negotiations on the delay." *Wilson*, 2010-NMCA-018, ¶ 33. "[T]he [s]tate must affirmatively seek to move the case to trial, even while plea negotiations are pending." *Id.* Further, "unsuccessful plea negotiations do not constitute a valid reason for suspending the defendant's right to a speedy trial" but "the time during which a defendant does not timely respond to plea offers will weigh only slightly against the [s]tate." *Id.* (internal quotation marks and citation omitted).

**{30}** The delay related to plea negotiations was less than two months, during which both parties continued preparing for trial. Therefore, we weigh this period of delay neutrally. *See State v. Marquez*, 2001-NMCA-062, ¶ 18, 130 N.M. 651, 29 P.3d 1052 (holding the five-month period where parties were in plea negotiations weighed neutrally between the parties).

**{31}** The total delay in this case was fifteen months. Five months of that delay—from November 10, 2016 to April 10, 2017, caused by negligent or administrative delay—weighs slightly against the State. The remaining ten months of delay—from April 11, 2017 to February 7, 2018, attributable to normal case progression, an agreed-upon continuance, and plea negotiations—weighs neutrally and against neither party. Overall, this second *Barker* factor weighs slightly against the State. *See Wilson*, 2010-NMCA-018, ¶¶ 44, 50 (weighing the second *Barker* factor lightly against the state where eleven months of the delay weighed lightly against the state and three months of delay weighed neutrally).

## C.    Assertion of Right

**{32}** We next consider Defendant's assertion of his right to a speedy trial. Under this third *Barker* factor, "we explore the timing and manner in which [the d]efendant asserted his right." *Laney*, 2003-NMCA-144, ¶ 23. This Court must "accord weight to the frequency and force of the defendant's objections to the delay." *Wilson*, 2010-NMCA-018, ¶ 45 (internal quotation marks and citation omitted). "[T]he timeliness and vigor with which the right [to a speedy trial] is asserted may be considered as an indication of whether a defendant was denied needed access to speedy trial over the defendant's objection or whether the issue was raised on appeal as an afterthought." *Gallegos*, 2016-NMCA-076, ¶ 23 (alteration, internal quotation marks, and citation omitted). "[P]ro forma motions are generally afforded relatively little weight in this analysis." *State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061. "The individual circumstance of each case must be closely analyzed." *Brown*, 2017-NMCA-046, ¶ 29.

**{33}** Defendant argues he asserted his speedy trial right three times: in his March 27, 2017 speedy trial demand, his November 8, 2017 motion in limine, and his November 20, 2017 motion to dismiss on speedy trial grounds. Defendant contends that these demands provided sufficient and consistent notice to the State; thus, the third *Barker* factor should weigh heavily in his favor. Although Defendant sufficiently asserted his right to a speedy trial, we do not agree with Defendant that this factor weighs heavily in his favor.

**{34}** Defendant first asserted his speedy trial right four months after his indictment along with a request for discovery and an entry of appearance. This type of pro forma motion is "generally afforded relatively little weight." *Urban*, 2004-NMSC-007, ¶ 16.

**{35}** Defendant did not raise his right to a speedy trial again until five days before trial, when he did so in the form of a motion in limine to exclude certain testimony and/or to dismiss on speedy trial grounds. Although this assertion is sufficient to weigh this factor

in Defendant's favor, because the motion was filed so close to trial, we give it little weight. *See Gallegos*, 2016-NMCA-076, ¶ 25 (holding that a motion to dismiss filed six weeks prior to the scheduled trial setting was afforded less weight in the defendant's favor than if it had been filed earlier). Similarly, while Defendant's third assertion of his right to a speedy trial is sufficient to weigh in Defendant's favor, we do so only slightly, because this assertion was merely a continuation of the previous assertion raised just five days before trial.

**{36}** Defendant's assertions of his right to a speedy trial were neither repeated nor insistent. He made one perfunctory assertion, a second assertion on the eve of trial, and a third that was merely a continuation of the second when the district court insisted on adequate briefing from Defendant. Accordingly, this factor weighs only slightly in Defendant's favor.

## D.    Prejudice

**{37}** "The heart of the speedy trial right is preventing prejudice to the accused." *Brown*, 2017-NMCA 046, ¶ 33 (internal quotation marks and citation omitted). We analyze prejudice to the accused by considering three interests: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Garza*, 2009-NMSC-038, ¶ 35. "Generally the defendant has the burden of proof to show particularized prejudice" of the kind against which the speedy trial right is intended to protect. *Brown*, 2017-NMCA 046, ¶ 33 (internal quotation marks and citation omitted). We consider whether Defendant "offered some actual evidence in the form of affidavits, testimony, or documentation in support of the allegations" of prejudice, which was caused by the delay in bringing the case to trial. *Spearman*, 2012-NMSC-023, ¶ 39. Based on our review, we determine that Defendant has not met his burden.

**{38}** Because he was already serving a seven-year sentence as a result of a previous conviction, Defendant concedes that he cannot show prejudice due to oppressive pretrial incarceration. Therefore, only the second and third interests are implicated here.

**{39}** As evidence of his pretrial anxiety and concern, Defendant points to receiving punitive administrative points at the Detention center because of the original charges filed against him in magistrate court and that he was denied furlough during the pretrial period to attend his father's funeral.

**{40}** However, we weigh the prejudice factor in a defendant's favor when "the anxiety suffered [by the defendant] is undue." *Garza*, 2009-NMSC-038, ¶ 35. "[S]ome degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial." *Id.* (alteration, internal quotation marks, and citation omitted). Here, assuming that Defendant received administrative punishment at the Detention center because of the initial charges, such hardship was caused by the complaint itself, not pretrial delay. Defendant mentions he was unable to attend his father's funeral but provides no evidence of when the funeral occurred or evidence that the pretrial delay was the

reason for denial of his furlough request. Further, Defendant did not introduce any evidence beyond his own assertions establishing that his anxiety was undue. Defendant's generalized statements, without more, do not support a particularized showing of prejudice. *See State v. Ochoa*, 2017-NMSC-031, ¶ 53, 406 P.3d 505 ("[M]ere allegations are insufficient to prove prejudice.").

**{41}** Defendant next argues his defense was impaired both by the preindictment delay and by the State's behavior after indictment. He contends that during the preindictment delay some inmates were released from the Detention center to a different facility, some inmates were transferred elsewhere at the jail, and some employees were terminated or resigned, which impaired his defense. He further contends that during the pretrial discovery period, the State impaired his defense by not properly participating in discovery.

**{42}** To establish that he was prejudiced because his defense was impaired, Defendant "must state with particularity what exculpatory testimony would be offered and the defendant must also present evidence that the delay caused the witness's unavailability." *Garza*, 2009-NMSC-038, ¶ 36 (alteration, internal quotation marks, and citation omitted). Defendant fails to do so here. Defendant fails to identify which particular witnesses were unavailable, which witnesses he would have called but could not because of the delay, what those witnesses would have testified to that would have been necessary to his defense, or how the State's behavior impaired his ability to mount a defense. All considered, Defendant has simply offered no evidence, beyond his assertions, of a particularized showing of prejudice.

## Balancing Factors

**{43}** We conclude that the length of and reasons for delay weigh slightly against the State. The assertion of the right weighs slightly in Defendant's favor. Defendant fails to demonstrate particularized prejudice arising from the delay. Balancing these, we conclude that Defendant's right to a speedy trial was not violated. *See id.* ¶ 40 (holding that because "[the d]efendant failed to demonstrate particularized prejudice . . . and the other factors do not weigh heavily in [the d]efendant's favor[,]" the defendant's right to a speedy trial was not violated).

## II.    Defendant's Due Process Right Was Not Violated

**{44}** We next address Defendant's argument that preindictment delay violated his right to due process. "The Due Process Clause requires dismissal of the charges if it is shown that the pre[]indictment delay violated the defendant's due process." *State v. Grubb*, 2020-NMCA-003, ¶ 21, 455 P.3d 877 (alterations, internal quotation marks, and citation omitted). Normally, "statutes of limitations provide the primary protection against delay-induced prejudice[.]" *Gonzales v. State*, 1991-NMSC-015, ¶ 4, 111 N.M. 363, 805 P.2d 630. Outside of this normal protection, the Due Process Clause of the Fifth Amendment of the United States Constitution "provides additional, albeit limited, protection against improper preaccusation delay." *Id.* "The Due Process Clause requires

dismissal of the charges if it is shown that the preindictment delay caused substantial prejudice to defendant's rights to a fair trial, and the delay was an intentional device to gain tactical advantage over the accused." *State v. Lewis*, 1988-NMCA-015, ¶ 10, 107 N.M. 182, 754 P.2d 853.

**{45}** "[T]he presence of prejudice is dependent upon the adverse effect delay has had on the merits of the defendant's case in light of all the circumstances." *Gonzales*, 1991-NMSC-015, ¶ 9. A defendant must make a showing of both "actual" and "substantial" prejudice. *Id.* ¶ 7. "Actual" prejudice establishes a threshold of certainty. *Id.* ¶ 8 A defendant must be able to show "definite and not speculative prejudice, and in what specific manner missing witnesses would have aided his defense." *Id.* ¶ 8 (internal quotation marks and citation omitted). "Substantial" prejudice evinces that that prejudice is more than nominal and that it impacted the defense. *Id.* ¶ 8.

**{46}** Defendant makes no specific argument regarding the actual and substantial prejudice he suffered due to preindictment delay. Instead, Defendant relies on the arguments previously made within his speedy trial argument to establish prejudice. We have already concluded that Defendant failed to establish prejudice as a result of the pretrial delay and therefore, we need not consider Defendant's assertion of prejudice due to preindictment delay further.

**{47}** Because Defendant has failed to demonstrate prejudice, we need not proceed to the second prong of the analysis: consideration of whether Defendant made a prima facie showing that the delay was intentional by the State to gain a "tactical disadvantage" on Defendant. *Id.* ¶ 10.

**CONCLUSION**

**{48}** Finding no error, we affirm.

**{49}  IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**