This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **No. A-1-CA-34739**

**MARC ANTHONY TAPIA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline Flores, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Rozan Cruz & Associates, P.C.
Rozan Cruz
Corrales, NM

for Appellant

## MEMORANDUM OPINION

**SUTIN, Judge.**

**{1}** Defendant Marc Anthony Tapia was convicted of promoting prostitution in violation of NMSA 1978, Section 30-9-4 (1981), accepting the earnings of a prostitute in violation of NMSA 1978, Section 30-9-4.1 (1981), possession of a stolen vehicle in violation of NMSA 1978, Section 30-16D-4(A) (2009), possession of a controlled substance in violation of NMSA 1978, Section 30-31-23(E) (2011), and aggravated fleeing a law enforcement officer in violation of NMSA 1978, Section 30-22-1.1 (2003). On appeal, Defendant argues that the district court erred in: (1) denying his motion to dismiss for violation of his speedy trial right; (2) denying his motion for a more definite statement, which violated his due process and protection against double jeopardy rights; and (3) admitting hearsay evidence in violation of his right to confront his accuser. We affirm.

**BACKGROUND**

**{2}** Defendant was arrested on April 11, 2012 and on June 12, 2012 and was indicted on July 26, 2012 for prostitution-related charges and for charges connected to Defendant's alleged possession of a stolen vehicle and a controlled substance. On August 7, 2012, Defendant filed a notice of assertion of his speedy trial right,[1] and on

---

[1] There is a second speedy trial demand dated August 30, 2012 in the record. That demand was filed by an attorney who did not enter an appearance in this case and who did not represent Defendant. We do not consider the August 30, 2012 demand as a speedy trial demand made by Defendant.

November 14, 2012, the first notice of jury trial was filed, indicating that trial was to begin on March 4, 2013.

{3} One month before trial was set to begin, Defendant filed a motion for a more definite statement in which he alleged that the indictment was not specific enough for Defendant to appropriately defend himself. Defendant argued that the indictment, which referenced events that occurred sometime between "January 2012 and June 2012" did not provide proper notice. In response to Defendant's motion, the State argued that the only charges in the indictment that included a date range spanning five months were the human trafficking, promoting prostitution, and accepting earnings of a prostitute charges, which were all offenses that implicated a continuing course of conduct rather than isolated incidents. The State also referenced pretrial interviews and pointed to specific items provided as discovery that would support the charges and that gave Defendant proper notice in order to prepare his defense.

{4} Following Defendant's motion for a more definite statement, the State filed a motion for a finding of forfeiture by wrongdoing on February 22, 2013, after the State had been unable to schedule an interview with M.L., who was to be a witness for the prosecution, and was also Defendant's then-girlfriend and alleged victim to the prostitution-related charges. In its motion, the State alleged that Defendant engaged in wrongdoing that was intended to and likely did procure the unavailability of M.L.,

who had demonstrated an unwillingness to participate in a pretrial interview. The State asserted that it intended to secure M.L.'s availability at trial, but requested that if it was unable to do so, the State be permitted to admit M.L.'s testimonial and non-testimonial statements at trial regardless of whether they fell within a hearsay exception. A hearing on the State's motion was set for April 25, 2013.

{5}     The parties filed a number of additional motions, including Defendant's motion to suppress, Defendant's motion in limine, and the State's motion to amend the grand jury indictment to expand the time frame for the prostitution-related charges.

{6}     The hearing on the State's motion for a finding of forfeiture by wrongdoing was not completed on April 25, 2013, and a second hearing was set for May 6, 2013, at which time the district court planned to continue hearing arguments on the forfeiture motion and to hear Defendant's motion in limine and motion to suppress. A hearing on these matters and on Defendant's motion for a more definite statement was re-set for June 4, 2013. At the hearing, the district court granted the parties four weeks to submit proposed findings of fact and conclusions of law regarding the motion for a finding of forfeiture by wrongdoing. The parties submitted their proposals on July 9, 2013.

{7}     All other pending motions that had not been resolved to date were set to be heard on October 9, 2013. During the hearing on that date, Defendant withdrew his

4

motion to suppress, and the district court granted the State's motion to amend the grand jury indictment, effectively denying Defendant's motion for a more definite statement. Trial was set for February 17, 2014. On November 14, 2013, the State filed its notice of withdrawal of its motion for a finding of forfeiture by wrongdoing because it was no longer concerned that M.L. would fail to appear to testify at trial. The indictment was amended on December 3, 2013.

{8} One month before trial was to begin, the State filed a motion to remove defense counsel and a motion to seal the pleadings regarding the motion to remove. The district court held a hearing on the motion on March 13, 2014 and entered an order denying the motion on April 29, 2014. Meanwhile, the court re-set Defendant's trial for May 19, 2014. Defendant filed a motion to dismiss for violation of his speedy trial right and supporting memorandum on May 8, 2014. The motion was denied, and the district court entered the following general findings in support of its order: (1) "[o]n balance[,] the delay in this matter has not been unduly long[,]" (2) "[d]elays were the result of discovery and ongoing matters demonstrating that the case was not prepared for trial[,]" and (3) "Defendant's speedy trial rights have not been violated."

{9} Trial commenced on May 19, 2014. At trial, testimony was elicited from eight witnesses, including, in relevant part to this appeal, testimony from Damian Lujan, an officer with the Albuquerque Police Department. Officer Lujan testified that on April

2, 2012 he was dispatched after a woman named Margaret Hill reported that her vehicle had been stolen. He testified that the stolen vehicle was a beige Toyota Avalon and testified as to its license plate and VIN numbers. The State also elicited testimony from Detective Gonterman, also with the Albuquerque Police Department, who testified that she came into contact with M.L. and Defendant in June 2012 when she was running license plates at hotels that were known to have crime problems. According to Detective Gonterman, in the process of running plate numbers, she ran the plate number of a beige Toyota, and the plate came back as not being registered with the Motor Vehicle Division. She testified that when she ran the vehicle's VIN number through the National Crime Information Center and the Motor Vehicle Division, she discovered that the vehicle belonged to Margaret Hill and had been reported stolen. She also testified that the VIN number of the Toyota she investigated matched the VIN number listed on Officer Lujan's report. She identified the individual driving the at-issue vehicle on the date of her investigation as Defendant and testified that M.L. was a passenger in the vehicle.

{10}     The jury found Defendant guilty of promoting prostitution, accepting earnings of a prostitute, possession of a stolen vehicle, possession of a controlled substance, and aggravated fleeing a law enforcement officer. After the conclusion of the jury trial, but before sentencing, the district court judge assigned to the case left the bench.

The case was twice reassigned and sentencing was set for September 11, 2014. Sentencing was re-set a number of times, including at least once at the request of Defendant, and the judgment, sentence, and order partially suspending sentence was entered April 30, 2015.

{11}     Defendant timely appealed on May 11, 2015. This Court reviewed the record and Defendant's arguments on appeal and noted that the district court's order denying Defendant's motion to dismiss for violation of his right to a speedy trial did not include the requisite specific findings needed in order for this Court to meaningfully review the merits of Defendant's appeal. We therefore remanded the case for entry of written findings and conclusions on the various speedy trial factors. On remand, the district court entered an order with thorough findings of fact and conclusions of law.

**DISCUSSION**

**I.     Speedy Trial**

{12}     "The Sixth Amendment of the United States Constitution, as applied to the states by the Fourteenth Amendment, provides that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." *State v. Brown*, 2017-NMCA-046, ¶ 12, 396 P.3d 171 (alterations, internal quotation marks, and citation omitted), *cert. denied*, 2017-NMCERT-___ (No. S-1-SC-36385, Apr. 26, 2017). In evaluating whether there has been a violation of a defendant's right to a speedy trial,

our Supreme Court has adopted the United States Supreme Court's balancing test articulated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). *See State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387. The four factors to analyze are: (1) the length of delay, (2) the reasons for delay, (3) the defendant's assertion of his speedy trial right, and (4) the actual prejudice to the defendant caused by the delay. *Id.* "Each of these factors is weighed either in favor of or against the [prosecution] or the defendant, and then balanced to determine if a defendant's right to a speedy trial was violated." *State v. Spearman*, 2012-NMSC-023, ¶ 17, 283 P.3d 272. "In our review of a speedy trial ruling, this Court must give deference to the district court's factual findings, but we review the weighing and balancing of the *Barker* factors de novo." *Brown*, 2017-NMCA-046, ¶ 13 (internal quotation marks and citation omitted).

**{13}** On appeal, Defendant argues, per the *Barker* factors, that his speedy trial right was violated because: (1) the delay was 25 to 36 months, that his case was simple, and that this delay is presumptively prejudicial; (2) "[t]he State, including the court, is responsible for all the delay in this case[,]" although he argues that certain periods of time weigh more heavily against the State than others; (3) he demanded a speedy trial three times—on August 7, 2012, on August 30, 2012, and on May 8, 2014—and that he made several attempts to move his case forward as evidenced by his requests for interviews, motion for a more definite statement, discovery demand, and motion in

8

limine; and (4) he was prejudiced because he remained incarcerated for 23 months and seven days before the commencement of his trial, his child was placed in the custody of the Children, Youth & Families Department (CYFD) while he was in jail, and the delay impacted other cases in which he was involved. Defendant also argues that he was prejudiced by his sentencing delay, which did not occur for 11 months after the verdict.

{14}   In response, the State argues that (1) the case was of intermediate complexity, and that although the length of delay of 25 months exceeded the 15-month presumptively prejudicial threshold, the delay was not extensive; (2) the record supports the district court's conclusion that approximately 24 months of the pretrial period weigh neutrally, and one month weighs slightly against the State as administrative delay; (3) the August 7, 2012 assertion was pro forma and should be afforded little weight, the August 30, 2012 assertion was invalid because it was filed by an attorney that was later found to have not entered an appearance in the case and did not represent Defendant, and the May 8, 2014 assertion was late and should not weigh significantly in Defendant's favor; and (4) Defendant failed to prove some actual evidence of prejudice and failed to prove how any anxiety suffered by Defendant was undue. The State argues that the balance of the factors does not support dismissal. Additionally, the State argues that the sentencing delays did not violate his

9

speedy trial right because the delays weighed neutrally, Defendant did not prove that he was prejudiced, and because "the United States Supreme Court recently held that a defendant's right to a speedy trial under the Sixth Amendment does not extend beyond the time of conviction." *State v. Lopez*, 2017-NMCA-___, ¶ 12, __ P.3d __ (No. A-1-CA-34615, July 28, 2017).[2]

{15}     Here, the district court entered, in relevant part, the following findings of fact in support of its order denying Defendant's motion to dismiss: (1) the case was one of intermediate complexity, the length of the delay was presumptively prejudicial, and the length of the delay therefore weighed against the State; (2) 24 months of the delay weighed neutrally, and one month weighed lightly against the State; (3) while Defendant asserted his speedy trial right on August 7, 2012 and May 8, 2014, the first was a pro forma assertion, which weighed only slightly in Defendant's favor; and (4) "Defendant failed to provide some actual evidence of prejudice, and as a result, this factor does not weigh in his favor." The district court concluded that because "[t]he length of delay and assertion of the right weigh[ed] only lightly in Defendant's favor, the reasons for delay [did] not weigh in his favor, and the prejudice prong weigh[ed] against Defendant[, there was] no violation of the right to a speedy trial."

---

[2] The focus of the inquiry in *Lopez* was whether the defendant's due process rights were violated as a result of sentencing delays. 2017-NMCA-___, ¶¶ 1, 14-16. That issue was not raised in the present appeal.

{16} We address each *Barker* factor in turn.

**A.      Length of Delay**

{17}      "The length of the delay is a two-fold inquiry. Initially, we determine whether the delay is presumptively prejudicial. If it is presumptively prejudicial, we balance the length of the delay against the remaining three factors to assess whether the constitution has been violated." *State v. Laney*, 2003-NMCA-144, ¶ 11, 134 N.M. 648, 81 P.3d 591. A delay is presumptively prejudicial if the delay exceeds "one year for a simple case, 15 months for a case of intermediate complexity, and 18 months for a complex case." *State v. Serros*, 2016-NMSC-008, ¶ 22, 366 P.3d 1121. "In terms of the weight given to the length of the delay, the greater the delay, the more heavily it will potentially weigh against the prosecution." *State v. Steinmetz*, 2014-NMCA-070, ¶ 6, 327 P.3d 1145 (alterations, internal quotation marks, and citation omitted).

{18}      As indicated earlier, the parties dispute the actual length of delay. Defendant argues there was a 25- to 36-month delay, while the State argues there was a 25-month delay. It appears from Defendant's argument that he calculates a 36-month delay by including the time between trial and sentencing. However, the United States Supreme Court has held and this Court has recognized that a defendant's right to a speedy trial under the Sixth Amendment does not extend beyond the time of conviction. *See Betterman v. Montana*, ___ U.S. ___, 136 S. Ct. 1609, 1612 (2016) ("We hold that the

[Sixth Amendment's speedy trial] guarantee protects the accused from arrest or indictment through trial, but does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges."); *Lopez*, 2017-NMCA-___, ¶ 12. Because Defendant was first arrested for the crimes charged in this case on April 11, 2012 and his trial began on May 19, 2014, the time between his arrest and trial was approximately 25 months.

{19} The parties also dispute the level of complexity in this case. Defendant urges this Court to depart from the district court's finding that the case was intermediately complex, arguing that the case is simple because the evidence consisted of testimony from four officers and three civilian witnesses, and the evidence was in the form of testimony that had been available for some time. Defendant also asserts that we should not defer to the district court's finding as to complexity because the district court judge that entered the order on limited remand was a different judge than the judge that initially denied the motion.

{20} We see no reason to depart from the district court's finding that this case was intermediately complex. First, "[w]e give due deference to the district court's findings as to the level of complexity[,]" *State v. Plouse*, 2003-NMCA-048, ¶ 42, 133 N.M. 495, 64 P.3d 522, *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48, and in this case deference is due because, as noted by the district court, this case

12

involved several pretrial motions, an amended indictment, and the trial took seven days to complete. Second, Defendant offers no support for his proposition that findings of fact as to the complexity of a case are not supported by substantial evidence when the district court judge that enters findings of fact is a different judge than the district court judge who presided over the trial. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists[.]"); *see also State v. Clifford*, 1994-NMSC-048, ¶ 19, 117 N.M. 508, 873 P.2d 254 (reminding counsel that the appellate courts "are not required to do their research" and holding that "conclusory statement[s] will not suffice and [are] in violation of our [R]ules of [A]ppellate [P]rocedure"). Absent such support, we are not convinced that we should depart from the district court's finding that the case is intermediately complex.

{21}     In sum, the 25-month delay is beyond the 15-month presumptively prejudicial threshold for intermediately complex cases. This delay weighs moderately against the State. *See State v. Suskiewich*, 2016-NMCA-004, ¶¶ 6-8, 363 P.3d 1247 (holding that a 24-month delay in a case of intermediate complexity weighed moderately against the prosecution).

**B.     Reasons for Delay**

13

{22} "Closely related to the length of delay is the reason the government assigns to justify the delay." *State v. Castro*, 2017-NMSC-027, ¶ 22, __ P.3d. __ (No. S-1-SC-36062, Aug. 24, 2017) (internal quotation marks and citation omitted). "These reasons may either less[e]n or increase the prejudice to the defendant caused by the delay." *Brown*, 2017-NMCA-046, ¶ 18. Our Supreme Court has "recognized three types of delay that may be attributed to the [prosecution] and weighted against it at varying levels[: (1)] a deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government[; (2)] negligent or administrative delay . . . should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant . . . [; and (3)] appropriate delay, justified for a valid reason, such as a missing witness, is neutral and does not weigh against the [prosecution]." *Serros*, 2016-NMSC-008, ¶ 29 (first omission in original) (alteration, internal quotation marks, and citations omitted). When a case "progresse[s] with customary promptness" the delay is weighed neutrally. *State v. Parrish*, 2011-NMCA-033, ¶ 25, 149 N.M. 506, 252 P.3d 730.

{23} Defendant argues that all the delay in this case is attributable to the State, but focuses on the period from November 2, 2012 to January 6, 2014, arguing that during this 13-month period, the State intentionally delayed and filed frivolous motions,

14

weighing heavily against the State. Conversely, the State mirrors the analysis in the district court's order, arguing that the case proceeded normally and with customary promptness for the entirety of the case, with the exception of February 2014 to March 2014, which the State concedes was an administrative delay that weighs lightly against the State. We address each time period in turn.

**1.      April 11, 2012 to February 4, 2013**

**{24}**      Between April 11, 2012 and February 4, 2013, the case proceeded with customary promptness. During this time, Defendant was arraigned, the court set scheduling and pretrial conferences, and trial was set for March 4, 2013. Although Defendant alleges that the State caused delay, there is nothing in the record to indicate that either party delayed during this 10-month period. We therefore weigh this delay neutrally.

**2.      February 4, 2013 to October 16, 2013**

**{25}**      Between February 4, 2013 and October 16, 2013, the parties were litigating various motions, including a motion for a more definite statement filed by Defendant, a motion for a finding of forfeiture by wrongdoing filed by the State, a motion to suppress filed by Defendant, a motion in limine filed by Defendant, and a motion to amend the grand jury indictment filed by the State. Evidentiary hearings were required that had to be continued over several months. Both parties submitted proposed

findings of fact and conclusions of law on the forfeiture-by-wrongdoing issue. Although Defendant argues that the State's motion for a finding of forfeiture by wrongdoing was frivolous, we see nothing in the record supporting Defendant's position, and instead, we view that motion, along with the other motions filed in this period, as demonstrating that both parties were moving forward with customary promptness. *See State v. Valencia*, 2010-NMCA-005, ¶ 18, 147 N.M. 432, 224 P.3d 659 ("[P]eriods of time considered inevitable and periods during which the case is moved toward trial with customary promptness are not to be weighed against the [prosecution]." (internal quotation marks omitted)). Trial did not occur on March 4, 2013, and a new trial date of February 17, 2014 was set on October 16, 2013. There is nothing in the record to indicate that either party caused delay during this eight-month period.

**3.      October 16, 2013 to January 17, 2014**

{26}      Between October 16, 2013 and January 17, 2014, the case was again proceeding with customary promptness. During this period, the State withdrew its motion for a finding of forfeiture by wrongdoing because it was apparently no longer concerned that its witness, M.L., would be unavailable, the indictment was amended, and the case was moving forward. This three-month period weighs neutrally. *See id.*

**4.      January 17, 2014 to March 13, 2014**

**{27}** On January 17, 2014, one month before the case was set for trial, the State filed a motion to remove defense counsel. The district court held a hearing on that motion on March 13, 2014 and that same day re-set the trial for May 19, 2014. Although trial did not occur on February 17, 2014, presumably because the State's motion needed to be addressed prior to trial and the court did not set the March 13 hearing until March 4, 2014, this two-month delay, at most, constitutes administrative delay that weighs slightly against the State. *See Garza*, 2009-NMSC-038, ¶ 26 (" '[A] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.' " (quoting *Barker*, 407 U.S. at 531)).

**5.      March 13, 2014 to May 19, 2014**

**{28}** Once the trial was re-set, from March 13, 2014 to May 19, 2014, the case proceeded with customary promptness. This two-month period weighs neutrally.

**6.      Overall Reasons for Delay**

**{29}** We conclude that of the approximate 25-month delay in this case, all but two months of the delay weigh neutrally. However, we acknowledge that those two months weigh slightly against the State as administrative delay. Overall, the reasons for delay weigh only slightly against the State.

17

**C.    Assertion of the Right**

{30}    When considering whether Defendant asserted his right to a speedy trial, we "accord weight to the frequency and force of [a] defendant's objections to the delay[] and . . . analyze [a] defendant's actions with regard to the delay." *Serros*, 2016-NMSC-008, ¶ 76 (internal quotation marks and citation omitted). "[T]he timeliness and vigor with which the right is asserted may be considered as an indication of whether a defendant was denied needed access to [a] speedy trial over his objection or whether the issue was raised on appeal as afterthought." *Garza*, 2009-NMSC-038, ¶ 32. "[P]ro forma motions are generally afforded relatively little weight in this analysis." *State v. Maddox*, 2008-NMSC-062, ¶ 29, 145 N.M. 242, 195 P.3d 1254 (internal quotation marks and citation omitted), *abrogated on other grounds by Garza*, 2009-NMSC-038 ¶¶ 47-48. Additionally, assertions that are made in "the eleventh hour" are weighed only slightly in a defendant's favor. *Id.* ¶ 31 (internal quotation marks and citation omitted); *see State v. Ortiz-Burciaga*, 1999-NMCA-146, ¶ 35, 128 N.M. 382, 993 P.2d 96 ("[The d]efendant invoked his speedy trial right[] just prior to trial. Consequently, we do not give [the d]efendant much weight for this assertion because most of the delay had already passed and he moved for dismissal rather than for a prompt trial.").

18

{31} Here, Defendant asserted his right pro forma on August 7, 2012 and again in a motion to dismiss filed on May 8, 2014. These assertions weigh against the State but only slightly because the first demand was pro forma, and the motion to dismiss was filed less than two weeks before the start of trial. Under these circumstances, Defendant's assertion was not particularly timely or forceful, and thus this factor weighs only slightly in Defendant's favor.

**D.   Prejudice**

{32} There are three interests under which we analyze prejudice to Defendant: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Garza*, 2009-NMSC-038, ¶ 35 (internal quotation marks and citation omitted). "As to the first two types of prejudice, some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial[,]" and therefore "we weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Id.* (alterations, internal quotation marks, and citation omitted). "[W]ithout a particularized showing of prejudice, we will not speculate as to the impact of pretrial incarceration on a defendant or the degree of anxiety a defendant suffers[,]" and Defendant bears the burden of showing particularized prejudice. *Id.*; *State v. Urban*, 2004-NMSC-007, ¶ 18, 135 N.M. 279, 87 P.3d 1061 (holding that "[a]lthough the

19

[prosecution] bears the ultimate burden of persuasion, [the d]efendant does bear the burden of production [as to prejudice], and his failure to do so greatly reduces the [prosecution's] burden"). "However, if the length of delay and the reasons for the delay weigh heavily in the defendant's favor and the defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated." *Brown*, 2017-NMCA-046, ¶ 33 (internal quotation marks and citation omitted).

{33}    Defendant argues on appeal that he was prejudiced as a result of his pretrial incarceration and asserts that he suffered anxiety, concern, stigma, and economic hardship as a result of being arrested and charged. He argues that while he was incarcerated, his child was removed from the child's mother's care by CYFD, and Defendant was unable to see his family members. He asserts that, based on the circumstances, this Court may presume prejudice.

{34}    We begin by rejecting Defendant's argument that we can presume prejudice. "To find a speedy trial violation where [the d]efendant has failed to show actual prejudice, . . . the three other *Barker* factors must weigh heavily against the [prosecution]." *Castro*, 2017-NMSC-027, ¶ 32 (omission in original) (alterations, internal quotation marks, and citation omitted). Because none of the other *Barker* factors weigh heavily in Defendant's favor, we cannot presume prejudice. We

20

therefore must consider whether Defendant demonstrated that he was actually prejudiced by the delay. Defendant fails to demonstrate actual prejudice for two reasons.

**{35}** First, his assertions of prejudice are not supported by any citations to the record. Without citations to the record, we presume that those arguments were not made to the district court and thus not preserved, and we do not consider unpreserved arguments. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."); *State v. Leon*, 2013-NMCA-011, ¶ 33, 292 P.3d 493 ("We generally do not consider issues on appeal that are not preserved below." (internal quotation marks and citation omitted)). Indeed, as noted by the district court, Defendant did not request an evidentiary hearing at which he could present evidence regarding the prejudice he allegedly suffered. Without proof of such prejudice, Defendant's assertions amount to mere argument of counsel, and we are left to speculate as to the impact of pretrial incarceration on Defendant and on the degree of anxiety Defendant suffered, which we will not do. *See Garza*, 2009-NMSC-038, ¶ 35.

**{36}** Second, Defendant has failed to demonstrate that if he did suffer prejudice, that prejudice was undue. *See Brown*, 2017-NMCA-046, ¶ 33 ("Because some degree of oppression and anxiety is inherent for every defendant who is jailed awaiting trial, the

defendant bears the burden to establish that the pretrial incarceration or the anxiety suffered by the defendant is undue." (alteration, internal quotation marks, and citation omitted)). Because Defendant failed to demonstrate particularized, undue prejudice, this factor does not weigh in his favor.[3]

**E.      Balancing the *Barker* Factors**

{37}      The length of delay, reasons for delay, and assertion of the right to speedy trial factors weigh against the State but not heavily. The length of delay weighed moderately against the State, while the reasons for delay and assertions of the right to speedy trial weigh only slightly against the State. Because Defendant failed to demonstrate particularized prejudice and the other factors do not weigh heavily in Defendant's favor, we hold that there was no violation of Defendant's right to a speedy trial. *See Garza*, 2009-NMSC-038, ¶ 40.

**II.      Motion for a More Definite Statement**

---

[3] We note that the Supreme Court issued its opinion in *State v. Ochoa*, No. S-1-SC-34360, 2017 WL 361661, ____-NMSC-___, ¶ 54, ___ P.3d ___ (Oct. 23, 2017), just days before we filed this memorandum opinion. Although our Supreme Court in *Ochoa* presumed that two years of pretrial incarceration was prejudicial, the Court ultimately held that the prejudice did not result in a speedy trial violation because (1) based on the record, the Court could only speculate as to particularized, undue prejudice; and (2) the remaining *Barker* factors did not weigh in Defendant's favor. *Id.* ¶¶ 57, 60-66.  In our view, although our analysis here differs slightly from the analysis in *Ochoa*, the holdings are congruous.

22

{38} Defendant's second argument on appeal is that the district court erred in denying his motion for a more definite statement. Defendant's argument is based on the Due Process and Double Jeopardy Clauses and thus poses constitutional questions that we review de novo. *See Los Chavez Cmty. Ass'n v. Valencia Cty.*, 2012-NMCA-044, ¶ 12, 277 P.3d 475 ("We review questions of constitutional law and constitutional rights, such as due process protections, de novo." (internal quotation marks and citation omitted)); *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77 ("[O]ur review of [the defendant's] double jeopardy claim is de novo.").

{39} Under the Sixth and Fourteenth Amendments to the United States Constitution, "[f]ailure to charge [a] defendant with a specific act or specific acts violates his right to be informed of the charges against him and denies him due process of law." *State v. Foster*, 1974-NMCA-150, ¶ 8, 87 N.M. 155, 530 P.2d 949; *see* U.S. Const. amends. VI, XIV. Additionally, the Fifth Amendment to the United States Constitution and "[p]rocedural due process . . . requires that criminal charges provide criminal defendants with the ability to protect themselves from double jeopardy." *State v. Dominguez*, 2008-NMCA-029, ¶ 5, 143 N.M. 549, 178 P.3d 834 (internal quotation marks and citation omitted); *see* U.S. Const. amend. V.

{40} Defendant argues that the charging document in this case alleged four incidents occurring over a five- to six-month period without providing needed detail. Defendant notes that he requested that the dates be narrowed to allow adequate investigation for his defense, but instead, the district court allowed the time frame to be expanded in an amended indictment. Defendant argues that in addition to impacting his due process rights, the vagueness in the indictment does not protect Defendant against double jeopardy.

{41} Although Defendant asserts that the delay violated his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Defendant's arguments on appeal are legally and factually undeveloped and amount to little more than assertions of counsel that Defendant's rights were violated. *See Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence."); *see also State v. Ortiz,* 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 (reasoning that "[a] party cannot throw out legal theories without connecting them to any elements and any factual support for the elements" (internal quotation marks and citation omitted)). Defendant does not analyze or provide any evidentiary support for his reasonable-notice argument under the two-part test that this Court has adopted for determining whether a charging period

24

is overly broad, i.e. "(1) whether the [prosecution] could reasonably have provided greater specificity of the times of the alleged offenses and (2) if so, whether the [prosecution's] failure to do so prejudiced the defendant." *State v. Ervin*, 2002-NMCA-012, ¶ 6, 131 N.M. 640, 41 P.3d 908. And Defendant makes no real double jeopardy argument outside of his due process argument. We are not inclined to make Defendant's arguments for him. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will not review arguments that "require us to guess at what [a party's] arguments might be").

{42} That said, to the extent Defendant does assert that he was prejudiced, we note that Defendant failed to prove, as he was required, that any prejudice suffered was "both actual, not based on pure conjecture, and substantial in its impact on the defense." *Ervin*, 2002-NMCA-012, ¶ 17. "[W]ithout prejudice, there is no reversible error." *Id*. And, as stated in our case law, "a long charging period does not itself constitute prejudice." *State v. Tafoya*, 2010-NMCA-010, ¶ 17, 147 N.M. 602, 227 P.3d 92.

**III. Hearsay and Confrontation Clause**

{43} Defendant's final argument on appeal is that the district court erred in permitting hearsay evidence in violation of his right to confront his accuser. Defendant's argument is based on the Confrontation Clause of the Sixth Amendment.

"Questions of admissibility under the Confrontation Clause are questions of law, which [the appellate courts] review de novo." *State v. Aragon*, 2010-NMSC-008, ¶ 6, 147 N.M. 474, 225 P.3d 1280, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110. We review the district court's decision to admit evidence for abuse of discretion. *See State v. Romero*, 2006-NMCA-045, ¶ 12, 139 N.M. 386, 133 P.3d 842.

{44} The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. In New Mexico, "the Confrontation Clause permits admission of a non-available declarant's hearsay statement if it falls within a firmly rooted exception to the hearsay rule. If the disputed statement does not fall within a firmly rooted hearsay exception, then there must be particularized guarantees of trustworthiness equivalent to those associated with a firmly rooted exception." *State v. Lopez*, 2000-NMSC-003, ¶ 15, 128 N.M. 410, 993 P.2d 727 (internal quotation marks and citation omitted). Even when testimony runs afoul of the Confrontation Clause, however, a defendant's conviction may not be reversible on that basis if the prosecution demonstrates "that the error is harmless beyond a reasonable doubt." *State v. Moncayo*, 2012-NMCA-066, ¶ 15, 284 P.3d 423 (alteration, internal quotation marks, and citation omitted). "A reviewing court should only conclude that a

constitutional error is harmless when there is no reasonable probability that it affected the verdict." *Id.*

{45}     Here, Officer Lujan testified that he was dispatched after a woman named Margaret Hill reported that her vehicle had been stolen. He testified that the stolen vehicle was a beige Toyota Avalon and testified as to its license plate and VIN numbers. Defendant argues on appeal that this testimony violated his rights under the Confrontation Clause because Ms. Hill was available, Officer Lujan's testimony was testimonial, and Defendant did not have an opportunity to cross-examine Ms. Hill. In response, the State essentially argues harmless error. Specifically, the State argues that there was other testimony and documentary evidence that was offered, without objection, that was cumulative of Officer Lujan's testimony. The State cites to testimony from Detective Gonterman and another officer who was working with Detective Gonterman, both of whom testified that the car in Defendant's possession had been reported stolen. The State also notes that documents showing that the car was sold and registered to Ms. Hill were admitted without objection.

{46}     Assuming without deciding that Officer Lujan's testimony was violative of the Confrontation Clause, we nevertheless hold that Defendant's convictions need not be reversed because the admission of his testimony constituted harmless error. In conducting a harmless error analysis, we are guided by the following factors: "(1) the

importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case." *State v. Zamarripa*, 2009-NMSC-001, ¶ 53, 145 N.M. 402, 199 P.3d 846. Here, Officer Lujan's testimony was brief and was simply cumulative of the testimony and documentary evidence already presented. There was no evidence contradicting Officer Lujan's testimony that the vehicle was stolen. And given the other evidence provided, his testimony as to this topic was not important to the prosecution's case. In light of these factors, we conclude that there is no reasonable probability that his testimony affected the verdict, and therefore, we conclude that any error in admitting Officer Lujan's testimony was harmless.

**CONCLUSION**

{47}    For the reasons set forth in this opinion, we affirm.

{48}    **IT IS SO ORDERED.**


_____
                                        **JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**J. MILES HANISEE, Judge**


_____

**JULIE J. VARGAS, Judge**