This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **No. A-1-CA-35724**

**JEREMIAH JOHN GURULE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Christina P. Argyres, District Judge**

Hector H. Balderas, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VARGAS, Judge.**

**{1}** Defendant Jeremiah Gurule appeals his conviction for second-degree murder and tampering with evidence. On appeal, Defendant makes the following arguments: (1) the State violated his right to a speedy trial, (2) the district court erred in admitting his involuntary statements into evidence, (3) the State failed to produce material video evidence of Defendant's arrest and interrogation, (4) the district court erred in failing to instruct the jury on Defendant's theory of self-defense, and (5) the State did not present sufficient evidence to support his conviction for second-degree murder. We reverse on speedy trial grounds. In light of our holding on Defendant's speedy trial claim, we need not reach the remaining issues raised by Defendant on appeal.

**BACKGROUND**

**{2}** On April 2, 2010, Elizabeth Brito (Victim) called 911, telling dispatch that she was bleeding and needed assistance. Police arrived at Victim's home and found Victim dead, lying face-down on the kitchen floor, with a large pool of blood surrounding her head. Police observed stab wounds on Victim's body, some of which were located on her neck. Defendant turned himself into the police the following day, and was charged with one count of murder and two counts of tampering with evidence. As this is a memorandum opinion and the parties are familiar with the facts of this case, we reserve further discussion of the procedural history of Defendant's case within the context of his speedy trial argument.

**DISCUSSION**

**Speedy Trial**

**{3}** Defendant argues that his right to a speedy trial was violated. "In a criminal prosecution, the accused is constitutionally entitled to a speedy trial." *State v. Castro*, 2017-NMSC-027, ¶ 15, 402 P.3d 688. "Whether a defendant has been deprived of the right requires a case-by-case analysis." *State v. Dorais*, 2016-NMCA-049, ¶ 20, 370 P.3d 771. When analyzing a defendant's speedy trial claim, we assess "the four factors presented by the United States Supreme Court in *Barker* [*v. Wingo*, 407 U.S. 514 (1972)] and adopted by New Mexico courts: (1) the length of delay in bringing the case to trial, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Castro*, 2017-NMSC -027, ¶ 16 (alterations, internal quotation marks, and citation omitted). "Each of these factors is weighed either in favor of or against the state or the defendant, and then balanced to determine if a defendant's right to a speedy trial was violated." *State v. Brown*, 2017-NMCA-046, ¶ 13, 396 P.3d 171 (alteration, internal quotation marks, and citation omitted). "The factors have no talismanic qualities, and none of them are a necessary or sufficient condition to the finding of a violation of the right to a speedy trial." *Id.* (alterations, internal quotation marks, and citation omitted). "Rather they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* (internal quotation marks and citation omitted). "In our review of a speedy trial ruling, this Court must give deference to the district court's factual findings, but we review the weighing and the balancing of the *Barker* factors de novo." *Id.* (internal quotation marks and citations omitted).

**1.     Length of Delay**

**{4}** The "length of delay" factor serves "as a threshold triggering mechanism used to determine whether the delay is 'presumptively prejudicial' so as to continue with a full speedy trial analysis." *Id.* ¶ 14. "If the delay crosses the 'presumptively prejudicial' threshold, a speedy trial analysis is warranted." *Id.* "A delay is presumptively prejudicial if the delay exceeds . . . eighteen months for a complex case." *Id.* (alterations, internal quotation marks, and citation omitted). "We defer to the district court's finding on the

question of complexity when it is supported by substantial evidence." *State v. O'Neal*, 2009-NMCA-020, ¶ 16, 145 N.M. 604, 203 P.3d 135 (internal quotation marks and citation omitted). Neither Defendant nor the State contests the district court's finding that this was a complex case. Moreover, the district court's finding is supported by the complex evidentiary issues, the number of witnesses, and the issue of Defendant's competency. *See State v. Thomas*, 2016-NMSC-024, ¶ 11, 376 P.3d 184 (explaining that we defer to the district court's finding on the complexity of the case because it is "familiar with the factual circumstances [and] the contested issues and available evidence"). Accordingly, we defer to the district court's finding that this was a complex case, for which a length of delay in excess of eighteen months is considered presumptively prejudicial. *See Brown*, 2017-NMCA-046, ¶ 14.

**{5}**    Defendant was arrested in this case on April 3, 2010, and was brought to trial on February 8, 2016. As the delay of approximately seventy months exceeded the presumptively prejudicial threshold by approximately fifty-two months, we weigh this factor heavily against the State. *See id.* ¶ 17 (holding that a delay of forty-two months in a complex case weighs heavily against the state); *see also State v. Moore*, 2016-NMCA-067, ¶ 11, 378 P.3d 552 (holding that a delay of forty-six months in a complex case weighs heavily against the state); *State v. Flores*, 2015-NMCA-081, ¶ 7, 355 P.3d 81 (holding that a sixty-two month delay in a complex case weighs heavily in the defendant's favor).

## 2.    Reasons for Delay

**{6}**    "Closely related to the length of delay is the reason the [state] assigns to justify the delay." *Flores*, 2015-NMCA-081, ¶ 8 (internal quotation marks and citation omitted). "The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." *State v. Garza*, 2009-NMSC-038, ¶ 25, 146 N.M. 499, 212 P.3d 387 (internal quotation marks and citation omitted). Courts in New Mexico recognize four types of delay: (1) "intentional delay" is the state's "deliberate attempt to delay prosecution of the case in order to hamper the defense[,] . . . [which] weighs heavily against the state"; (2) "negligent or administrative delay," which "weighs more lightly against the state" but begins to weigh more heavily against the state as the length of delay increases; (3) "delay . . . justified for valid reasons," which weighs neutrally; and (4) "delay caused by the defense[,]" which weighs against the defendant. *Brown*, 2017-NMCA-046, ¶ 18 (alteration, internal quotation marks, and citation omitted). "The complicated circumstances of this case require that we analyze each period of delay separately." *Id.*

**{7}**    From Defendant's arrest on April 3, 2010 to October 20, 2010, the case was proceeding normally toward trial. During this time, Defendant was arraigned and filed a demand for the State's disclosure. The State filed a grand jury indictment, a demand for Defendant's disclosure and alibi, a list of witnesses, and a motion for Defendant's fingerprint and hand impressions. After defense counsel suspected Defendant's competency was an issue, he requested a forensic evaluation. Defendant's forensic evaluator found Defendant incompetent to stand trial, and, on October 14, 2010,

Defendant raised competency as an issue in the district court. On October 20, 2010, the district court ordered a forensic evaluation of Defendant's competency and stayed the proceedings pending a judicial determination of competency. As the case was proceeding normally toward trial until the district court's October 20, 2010 order, we weigh this period of six months and seventeen days neutrally. *See id.* ¶ 19 (concluding the period in which the case was proceeding normally toward trial was "appropriate, neutral delay and [does] not weigh against either party").

**{8}** On November 3, 2010, the district court found Defendant was "presently not competent to proceed in the criminal case" and ordered Defendant's commitment to the New Mexico Behavioral Health Institute (NMBHI). In its order, the district court directed the Bernalillo County Sheriff's Department to transport Defendant to NMBHI. However, because NMBHI did not have available room, Defendant remained in custody at the Metropolitan Detention Center (MDC) until February 22, 2011. In the absence of evidence demonstrating that the State failed to bring Defendant to trial in a timely manner from October 20, 2010 to November 3, 2010, or that this delay was unreasonable, solely attributable to defense counsel, or unnecessary, we weigh this period of fourteen days against Defendant. *See State v. Stock*, 2006-NMCA-140, ¶¶ 19-22, 29, 140 N.M. 676, 147 P.3d 885 (explaining that, generally, delays resulting from competency evaluations weigh against the defendant, not the state, because they are "for the defendant's benefit," but declining to weigh against the defendant the "extraordinary periods of delay" involved in the defendant's case, resulting from both defense counsel's prolonged failure to send the evaluation report to either the state or the court, and the state's "failure to monitor the case and ensure that steps were being taken to bring [the d]efendant to trial in a timely manner"). We weigh the three months and nineteen days of delay from November 3, 2010 to February 22, 2011 against the State as administrative delay. *See id.* ¶¶ 8, 18 (weighing administrative delay against the state).

**{9}** On August 2, 2011, an examiner at NMBHI submitted a report indicating that Defendant was competent to stand trial. The district court, on August 9, 2011, scheduled a competency hearing for August 23, 2011. Defendant filed a motion for an evidentiary hearing on his competency on August 16, 2011, prompting the district court to vacate the August 23, 2011 hearing and schedule a competency hearing on October 11, 2011. The State filed motions for an "order requiring disclosure and protecting the privacy of records and other health information[,]" and requested a hearing on its motions, and Defendant filed a stipulated motion for a continuance of the October 11, 2011 hearing. The district court re-scheduled the competency hearing for December 6, 2011. Following a status conference, the district court vacated the December 6, 2011 hearing, and later scheduled the competency hearing for July 24, 2012.

**{10}** Defendant does not contend, nor does the record indicate, that the delay from February 22, 2011 to December 6, 2011 was unreasonable, solely attributable to defense counsel, or unnecessary, or that the State failed to bring Defendant to trial in a timely manner. We also note that although the record surrounding the continuance of the competency hearing from October 11, 2011 to December 6, 2011 is muddled, the

district court found that the October 11, 2011 setting "was reset to December 6, 2011, at the request of Defendant." *See State v. Ochoa*, 2017-NMSC-031, ¶ 4, 406 P.3d 505 (explaining that "[w]e defer to the district court's factual findings in considering a speedy trial claim"). We therefore weigh the nine months and fourteen days from February 22, 2011 to December 6, 2011 against Defendant as the delay was related to his competency evaluation. *See Stock*, 2006-NMCA-140, ¶¶ 19-22, 29. In the absence of evidence in the record demonstrating the reasons the district court vacated the December 6, 2011 competency hearing, we weigh the seven months and eighteen days until July 24, 2012 against the State. *See State v. Marquez*, 2001-NMCA-062, ¶ 16, 130 N.M. 651, 29 P.3d 1052 ("As the [s]tate has not met its burden of showing that this delay was reasonable, we determine this period weighs against it.").

**{11}** On July 5, 2012, the district court, upon the State's stipulated motion for a more current evaluation, ordered another evaluation of Defendant's competence. The district court granted the State's stipulated motion to continue the July 24, 2012 competency hearing "to a later date when . . . Defendant has been returned from NMBHI and another evaluation has been completed." However, Defendant was not transported to NMBHI until September 18, 2012. We therefore agree with the district court that the delay until September 18, 2012, a period of one month and twenty-five days, weighs against the State as administrative delay. *See Brown*, 2017-NMCA-046, ¶ 18.

**{12}** On December 10, 2012, another NMBHI evaluator found Defendant competent to stand trial, at which point the district court scheduled a competency hearing on January 28, 2013. On January 22, 2013, the State filed a stipulated motion to continue the competency hearing, citing both parties' need for additional time to prepare and explaining that although the State sought Defendant's position on the most recent competency evaluation, defense counsel did not respond until January 18, 2013. The district court granted the State's motion and scheduled a competency hearing on May 22, 2013.

**{13}** As the delay from September 18, 2012 to January 28, 2013 was attributable to the State's stipulated motion for a competency evaluation, and there is no indication that the delay was unreasonable, solely attributable to defense counsel, or unnecessary, or that the State failed to bring Defendant to trial in a timely manner, we weigh these four months and ten days neutrally. *See Stock*, 2006-NMCA-140, ¶¶ 19-22, 29 (recognizing that "delays caused by competency evaluations should generally not count against the state for speedy trial purposes because the state cannot try an incompetent defendant"). We also weigh the delay of three months and twenty-four days from January 28, 2013 to May 22, 2013 neutrally as it was the result of both parties' need for additional time to prepare, as well as defense counsel's failure to respond to the State's request for information. *See id.* ¶¶ 19-22.

**{14}** The district court rescheduled the competency hearing to June 26, 2013 after the New Mexico Department of Health objected to the State's subpoenas, which were issued to NMBHI employees shortly before the scheduled May 22, 2013 hearing. We therefore weigh this delay of one month and four days against the State. *See Brown*,

2017-NMCA-046, ¶ 18 (weighing "negligent or administrative delay" against the state). Following the June 26, 2013 competency hearing, the district court found Defendant competent to stand trial, and scheduled trial on December 2, 2013. As the case was proceeding normally toward trial, we weigh the five months and six days between June 26, 2013 and December 2, 2013 neutrally. *See id.* ¶ 19.

**{15}** Following the State's stipulated motion to continue the trial setting to pursue the possibility of a plea deal, the district court scheduled trial on July 7, 2014. We weigh this delay of seven months and five days against the State. *See State v. Samora*, 2016-NMSC-031, ¶ 13, 387 P.3d 230 (recognizing that "it is well settled that the possibility of a plea agreement does not relieve the [s]tate of its duty to pursue a timely disposition of the case" and weighing the period of delay caused by the parties' pursuit of a plea deal against the state (internal quotation marks and citation omitted)). The State again filed a stipulated motion to continue the trial setting, prompting the district court to schedule trial on October 20, 2014. As the State cited the need for additional time to conduct pre-trial interviews and resolve discovery issues as the basis for its stipulated motion to continue, we weigh this delay of three months and thirteen days against the State. *See Flores*, 2015-NMCA-081, ¶ 16 (weighing a period of delay caused by the state's need for more time to prepare against the state).

**{16}** Defendant later filed a motion to continue the October 20, 2014 trial setting, citing the need for additional time to interview witnesses and resolve discovery issues. Although the State objected to Defendant's motion, the district court granted Defendant's motion and scheduled trial on November 17, 2014. We weigh this period of twenty-eight days against Defendant. *See State v. Deans*, 2019-NMCA-015, ¶ 10, ___ P.3d ___ ("[A]ny delay caused by the defendant generally weighs against the defendant."), *cert. denied*, 2019-NMCERT-___ (No. S-1-SC-37473, Feb. 14, 2019). *But see Ochoa*, 2017-NMSC-031, ¶ 22 (concluding that a period of delay caused by defense counsel's need to interview the state's witnesses after three postponements "was a legitimate reason for [the d]efendant to seek to postpone the second trial setting" and thus does not weigh against the defendant). The district court granted a subsequent motion for a continuance filed by Defendant, and scheduled trial on February 2, 2015. Defendant's motion cited the need for his expert to conduct additional testing, but did not indicate whether the State stipulated to its motion. Indeed, Defendant noted that he "underst[ood] that the period of this requested continuance will count against him for purposes of speedy trial analysis." Accordingly, we weigh the two months and sixteen days from November 17, 2014 to February 2, 2015 against Defendant. *See Deans*, 2019-NMCA-015, ¶ 10.

**{17}** As a result of a "congested court docket" and "the impending imposition of LR2-400[,]" NMRA[1] the district court vacated the February 2, 2015 trial setting and scheduled trial on February 8, 2016. We therefore weigh this period against the State. *See Garza*, 2009-NMSC-038, ¶ 29 (identifying congested court dockets as negligent delay to be weighed against the state); *Brown*, 2017-NMCA-046, ¶ 18 (weighing "negligent or administrative delay" against the state).

---

1 Rule LR2-400 was amended and recompiled at Rule LR2-308 NMRA.

**{18}** In sum, we conclude approximately thirty-seven months weigh against the State, over thirteen months weigh against Defendant, and approximately twenty months weigh neutrally. While we acknowledge that there is no indication the State intentionally caused any of the delay, and that a significant amount of the delay weighing against the State was the result of administrative or negligent delay, we weigh this factor heavily against the State. *See Brown*, 2017-NMCA-046, ¶ 18 (explaining that "as the length of the delay increases, [negligent or administrative] delay begins to weigh more heavily against the state").

### 3.      Assertion of the Right

**{19}** "The timeliness and vigor with which the right to a speedy trial is asserted may be considered as an indication of whether a defendant was denied the right to a speedy trial over his objection or whether the issue was raised on appeal as an afterthought." *Id.* ¶ 29 (alterations, internal quotation marks, and citation omitted). "Accordingly, we consider [the d]efendant's assertion or failure to assert his right to a speedy trial as a factor in determining whether [the d]efendant was deprived of that right." *Id.* We "assess the timing of the defendant's assertion and the manner in which the right was asserted." *Id.* (internal quotation marks and citation omitted). Furthermore, "[w]e accord weight to the frequency and force of the defendant's objections to the delay and analyze the defendant's actions with regard to the delay." *Id.* (alteration, internal quotation marks, and citation omitted).

**{20}** Defendant made five separate assertions of his right to a speedy trial. Defendant first asserted his right to a speedy trial as part of an entry of appearance on April 16, 2010, while the case was in metropolitan court. Defendant next asserted his right on May 26, 2010, in conjunction with defense counsel's entry of appearance in district court. Defendant's third assertion took place on January 22, 2015, also in conjunction with defense counsel's entry of appearance. "Such pro forma motions are generally afforded relatively little weight in this analysis." *State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061. Defendant's fourth and fifth assertions took the form of motions to dismiss on speedy trial grounds, filed on October 5, 2015, and February 4, 2016. As Defendant filed these motions near the date of trial, after the vast majority of the delay had already passed, and sought dismissal rather than a prompt trial, we do not afford much weight to Defendant for these assertions. *See State v. Lujan*, 2015-NMCA-032, ¶ 18, 345 P.3d 1103 ("New Mexico courts, however, have concluded that a motion to dismiss based on speedy trial grounds is an assertion of the right that is weighed against the [state], although it is generally not weighed heavily."); *State v. Ortiz-Burciaga*, 1999-NMCA-146, ¶ 35, 128 N.M. 382, 993 P.2d 96 (concluding that "we do not give [the d]efendant much weight" for a motion to dismiss on speedy trial grounds, filed "just prior to trial[,]" as "most of the delay had already passed and he moved for dismissal rather than for a prompt trial"); *see also State v. Moreno*, 2010-NMCA-044, ¶ 33, 148 N.M., 233 P.3d 782 ("We recognize that generally, the closer to trial an assertion is made, the less weigh it is given.").

**{21}** In the hearing on Defendant's motion to dismiss on speedy trial grounds, Defendant appeared to cite two motions related to his competency determinations as assertions of his right to a speedy trial. In particular, Defendant cited a motion requesting the district court grant an order to show cause for the New Mexico Department of Health's failure to transport Defendant to NMBHI and a motion requesting an evidentiary hearing after NMBHI's examiner released the August 2, 2011 report finding Defendant competent. To the extent that these motions were efforts to expedite the time in which Defendant was brought to trial, Defendant's assertions were mitigated by his multiple motions for continuances and his acquiescence to the State's motions for continuances. *See State v. Samora*, 2016-NMSC-031, ¶ 20, 387 P.3d 230 ("Defendant's assertions of the right were mitigated by his acquiescence to, and responsibility for, numerous delays."); *Flores*, 2015-NMCA-081, ¶ 31 (explaining that "the force of a defendant's assertions is mitigated where he filed motions that were bound to slow down the proceedings" (internal quotation marks and citation omitted)); *see also Moreno*, 2010-NMCA-044, ¶ 34 (declining to view a defendant's opposition to motions as assertions of his speedy trial right as "there [was] no mention of a speedy trial concern as the basis"). *But see Moore*, 2016-NMCA-067, ¶ 22 (acknowledging that the defendant concurred with the state's continuance and requested a continuance himself, but concluding "that these actions should not be held against [the d]efendant when the [s]tate caused the delays by its inexcusable late disclosure either mere days or the day before the trial date"). We therefore weigh this factor only slightly in Defendant's favor.

### 4. Prejudice

**{22}** "The heart of the speedy trial right is preventing prejudice to the accused." *Brown*, 2017-NMCA-046, ¶ 33 (internal quotation marks and citation omitted). "[W]e analyze three interests that are affected by the right to a speedy trial: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *State v. Serros*, 2016-NMSC-008, ¶ 84, 366 P.3d 1121 (internal quotation marks and citation omitted). "Generally, the defendant has the burden of proof to show 'particularized prejudice.' " *Brown*, 2017-NMCA-046, ¶ 33 (internal quotation marks and citation omitted).

**{23}** "Because some degree of oppression and anxiety is inherent for every defendant who is jailed awaiting trial, the defendant bears the burden to establish that the pretrial incarceration or the anxiety suffered by the defendant is undue." *Id.* (alteration, internal quotation marks, and citation omitted). "Although a defendant bears the burden of proving prejudice, this burden varies with the length of pretrial incarceration." *Ochoa*, 2017-NMSC-031, ¶ 52. "The oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Serros*, 2016-NMSC-008, ¶ 89 (internal quotation marks and citation omitted). "Thus, the length of incarceration is a counterweight to a defendant's burden of production." *Ochoa*, 2017-NMSC-031, ¶ 54. As Defendant was incarcerated for over five years before he was brought to trial, we presume that he was prejudiced. *See id.* ¶ 57

(presuming prejudice by a defendant's two-year period of pretrial incarceration); *Serros*, 2016-NMSC-008, ¶ 90 (concluding that four years of pretrial incarceration "is oppressive on its face").

**{24}** However, our inquiry does not end with the presumption of prejudice stemming from a defendant's lengthy period of pretrial incarceration. *See Ochoa*, 2017-NMSC-031, ¶ 60. As our Supreme Court explained, "Though it is obvious that Defendant was prejudiced by virtue of his continuous incarceration, absent affirmative proof, we can only speculate as to the specific circumstances of his incarceration." *Id.* The Court cited *Serros*, 2016-NMSC-008, ¶¶ 88-90, as an example of where a defendant, through his testimony, presented affirmative proof supporting the Court's "determination that the pretrial incarceration resulted in extreme prejudice." *Ochoa*, 2017-NMSC-031, ¶ 60.

**{25}** In *Serros*, the defendant testified that he was placed in segregation from the time he was first incarcerated, and that he was permitted two twenty-minute periods outside his private cell during which time he could bathe, clean his cell, and attempt to speak with his attorneys or family. 2016-NMSC-008, ¶ 88. Because he was in segregation, the defendant "did not have access to education programs, library time, or recreational time available to the inmates housed with the jail's general population." *Id.* The defendant was subjected to sexual, physical, and verbal harassment, and was attacked by other inmates because of his sexuality. *Id.* Further, he requested to be moved out of segregation, but the jail officials refused to do so because of his sexuality and the charge against him for criminal sexual penetration of a minor. *Id.* Our Supreme Court held:

> [The d]efendant's testimony easily establishes that the delay in his case caused him to suffer oppressive pretrial incarceration. It is undisputed that, because [the d]efendant could not afford to pay his $150,000 bond, he was incarcerated for over four years without an adjudication of guilt, a length of time that we hold is oppressive on its face. That [the d]efendant was held in segregation for all of that time only compounds the prejudicial effect of his excessive pretrial incarceration.

*Id.* ¶ 90 (footnote and citation omitted).

**{26}** In reviewing this Court's conclusion that the defendant's segregation was not oppressive, our Supreme Court stated, "To the extent the majority was suggesting that [the d]efendant was better off in segregation than with the general population, [the d]efendant's testimony that he repeatedly requested to be transferred out of protective custody contradicts that notion." *Id.* ¶ 91. Our Supreme Court concluded the defendant's testimony sufficiently established that he was prejudiced insofar as he suffered undue anxiety and concern. *Id.* ("It does not take much empathy to see the anxiety and concern that [the d]efendant suffered from being held alone in a cell for more than 23 hours a day, for over four years.").

**{27}** On appeal, Defendant asserts he was prejudiced on account of his pretrial incarceration. In an affidavit he submitted in the district court, Defendant relayed that he was placed in a "23-hour[-]a[-]day lock-down segregation" for almost the entirety of his pretrial incarceration. Defendant explained that he was held alone in a private cell, except for thirty minutes in the morning when he was "able to walk on the caged tier of [his] pod" and bathe in a "shower cage." He was also given one hour of "cage time" in which he was placed in an outdoor cage by himself. Defendant stated that he was able to communicate with his family and friends though a closed-circuit video monitor for a maximum of twenty minutes. He explained that this limited human interaction caused him to suffer from "terrible loneliness."

**{28}** Lieutenant Abraham Gallardo, an officer from the MDC, testified during the hearing on Defendant's motion to dismiss on speedy trial grounds. Lieutenant Gallardo testified that Defendant was initially placed in segregation because of his "high-risk status" for assaulting staff. Defendant continued to assault or threaten staff and inmates during his time in custody. Lieutenant Gallardo described an incident when Defendant refused to go into his cell, prompting the officers to lock down the facility and use non-lethal weapons, including "a lot of Mace," so as to remove Defendant from the tier of a pod. Despite attempts to move Defendant into the jail's general population, Defendant remained in segregation because of these incidents.

**{29}** Although we acknowledge that Defendant's initial and continued placement in segregation was the result of his conduct while in custody, we cannot ignore the oppressive impact the conditions and duration of his incarceration had on Defendant. In its discussion of the potential prejudice in Defendant's case, the district court found that "any prejudice caused by the length of pretrial incarceration is tempered by Defendant's responsibility for more than a year's worth of delay." In reaching its conclusion, the district court relied on *Garza*, 2009-NMSC-038, ¶ 25 ("The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." (internal quotation marks and citation omitted)). While the delays related to Defendant's competency evaluations comprised nearly ten months of the total delay in his case, Defendant's motions for continuances—unrelated to his competency evaluations—resulted in only a minor delay in his pretrial incarceration. We therefore conclude that Defendant suffered extreme prejudice.

### 5. Balancing the *Barker* Factors

**{30}** We conclude that the length of and reasons for delay weigh heavily in Defendant's favor, that the assertion of the right weighs slightly in Defendant's favor, and that Defendant has suffered extreme prejudice as a result of his lengthy pre-trial incarceration in segregation. We therefore conclude that the *Barker* factors weigh in Defendant's favor such that his right to a speedy trial was violated.

### CONCLUSION

**{31}** The judgment and sentence are reversed, and we remand to the district court with instructions to dismiss the charges against Defendant.

**{32}** **IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**I CONCUR:**

**KRISTINA BOGARDUS, Judge**

**LINDA M. VANZI, Judge (dissenting)**

**VANZI, J. (dissenting).**

**{33}** I respectfully dissent in this case and would affirm the district court's ruling that Defendant's right to a speedy trial was not violated. First, I disagree with the majority's conclusion that the reason for delay counts heavily against the State. The district court entered detailed findings and conclusions in its order denying Defendant's motion to dismiss. The court found that there were a variety of factors that contributed to the overall delay, including Defendant's actions. Specifically, it found that the State was not negligent and was making efforts to move forward with the prosecution of this matter. In deference to the district court's findings, and absent any indication to the contrary, I determine that any delay should weigh only slightly against the State. In addition, while I agree with the majority that the weight given to Defendant's assertion of his speedy trial right is slight, I disagree that that Defendant suffered "extreme prejudice" as a result of his pretrial incarceration. I explain.

**Length of Delay**

**{34}** The majority determines a seventy month length of delay and I agree. The length of the delay, even for this complex case, is presumptively prejudicial and, therefore, triggers the balancing requirement.

**Reason for Delay**

**{35}** The reason for the delay is apparent from the record and the district court's order. The district court appropriately found that Defendant and the State were each responsible for some of the circumstances that caused the delay, and that twenty months of the delay did not weigh against either party. To the extent that the district court weighed thirty-three months of the delay against the State, it nevertheless found that the bulk of that delay was caused by administrative issues in the district court. Indeed, the court stated that none of the delay it attributed to the State "was intentionally caused and there were no unnecessarily prolonged periods of delay, but rather the parties appear [to] have been moving toward trial."

**{36}** In addition, Defendant's accountability for some part of the delay cannot be ignored. The district court found that Defendant was engaged in some measure of gamesmanship insofar as he stipulated to several continuances and then tried to hold those continuances against the State. And, the court said, "much of the delay in this case was caused or consented to by Defendant or caused by the need to determine Defendant's competency." In sum, the record establishes that the State continually tried to move this case along and at no time did it intentionally cause any of the delay nor was it negligent. Even during the final period of twelve months arising from the cancellation of the February 2015 trial date due to a congested court docket, the parties proceeded towards trial, filed motions, and requested settings.

**{37}** While the State undoubtedly bears some responsibility for the delay in this case, I see no evidence of any extraordinary or protracted delay attributable to the State. Moreover, much of the delay was due to competency proceedings and Defendant's stipulation to continuances. Thus, on balance, I would agree with the district court that this factor should be weighed slightly against the State.

**Prejudice**

**{38}** Defendant argues that the delay itself proves prejudice and that he was prejudiced by oppressive pretrial incarceration. While I agree with the majority that we presume prejudice stemming from Defendant's lengthy incarceration I disagree that his pretrial incarceration was undue. *See Garza*, 2009-NMSC-038, ¶ 35 (stating that we weigh pretrial incarceration in the defendant's favor "only where the pretrial incarceration or anxiety suffered is undue"). Here, the majority rejects the district court's findings that Defendant's pretrial confinement did not cause undue anxiety and concern, and instead concludes that Defendant "suffered *extreme* prejudice." Maj. Op. ¶ 30 (Emphasis added.). The majority's conclusion is not supported by the district court's findings or any evidence in the record.[2]

**{39}** The district court noted that Defendant's assertions of prejudice, which were detailed in an affidavit, focused on Defendant's daily routine, his general state of being, and his placement in segregation. While being placed in segregation can certainly be oppressive, in this case there was testimony that Defendant's placement in segregation was necessary for the safety of himself and others. Lieutenant Gallardo of the MDC testified and described the efforts to place Defendant in general population. He testified that Defendant was originally placed in segregation because he assaulted eight staff members when he was being booked into the facility. Lieutenant Gallardo then went on to describe the numerous times MDC tried to transition Defendant into general population but was unable to do so because of Defendant's behavior. In addition to the many minor infractions he committed, Defendant repeatedly assaulted or threatened to

---

[2] I note that the majority does not discuss—and thus gives no significance to—the third prejudice factor, that Defendant's defense was impaired. Of the three kinds of prejudice, *Garza* instructs that this is the "most serious" because the fairness of the entire criminal justice system is distorted when a defendant is unable to adequately prepare his defense. 2009-NMSC-038, ¶ 36. I assume the majority agrees with the district court's findings and conclusion that Defendant failed to establish that his defense was impaired by any delay.

assault staff members, he hid behind a closet door with the intent to attack another inmate, he threatened to stab a staff member, he was in possession of a shank, and he violated numerous institutional rules including taking the food port "hostage" on two separate occasions, spraying a liquid-like substance that smelled like feces on an inmate in another cell, and taking a tier "hostage" requiring a facility-wide lockdown. The district court found that it was Defendant's own behavior that prevented him from being moved and resulted in his placement in segregation and there is no evidence to the contrary.

{40}    Defendant's affidavit setting forth his allegations of prejudice is accurately described by the district court as "including that [Defendant] has been in segregation for the duration of this case, that [Defendant] suffers from depression and anxiety attacks, [] he has been unable to maintain a relationship with his family, and he has lost more than 15 pounds." The district court was not persuaded that Defendant's allegations rose to the level of undue prejudice sufficient to have this factor weigh in his favor. In particular, the court found that: (1) Defendant failed to allege when his PTSD and anxiety to the extent he needed medication arose, and the court would not "speculate that the delay caused these issues"; (2) Defendant's allegations concerning lost time with family was not any different "than the prejudice any person incarcerated would suffer"; and (3) there was no testimony about Defendant's relationship with his family prior to his incarceration or how that relationship had worsened as a result of his continued incarceration. The majority, however, rejects the district court's findings and concludes instead that Defendant suffered extreme prejudice because it "cannot ignore the oppressive impact the conditions and duration of his incarceration had on Defendant." Maj. Op. ¶ 29. I would agree with the district court that Defendant has not demonstrated any particularized or undue prejudice due to confinement. *See State v. Fierro*, 2012-NMCA-054, ¶ 57, 278 P.3d 541 (disagreeing with the defendant that he suffered undue prejudice as a result of being housed in segregation for the fifty-five month period he was awaiting trial despite his claims the he suffered from anxiety and concern, and that he had to take medications to endure the mental and physical toll the ordeal took on him).

{41}    The majority's reliance on *Serros*, 2016-NMSC-008, to establish that Defendant suffered extreme prejudice is inapposite because the factual circumstances of that case are different from the circumstances of this case. In *Serros*, the defendant was arrested and detained at MDC for allegedly sexually abusing his four-year-old nephew. *Id.* ¶ 6. MDC officials placed the defendant in protective custody as a result of "the charges against him and because he is homosexual[.]" *Id.* With regard to the prejudice prong, the Court began by noting the defendant's *unchallenged* testimony that he had been verbally and physically harassed by other inmates and by MDC officials, and that he was not allowed to move out of segregation because of the nature of the charges against him despite his repeated requests to do so. *Id.* ¶ 88. On this basis, our Supreme Court agreed with the district court's conclusion that the defendant suffered extreme prejudice by being in custody in segregation for almost four and one-half years. *Id.* Unlike the defendant in *Serros*, the restriction on Defendant here was of his own making. Defendant was placed in segregation not because of the nature of the charges

against him, but because of his own violent actions and threats against MDC officials and other inmates. In addition, MDC repeatedly tried to move Defendant out of segregation but was unable to do so because Defendant's behavior prevented him from transitioning into general population. In my view, *Serros* is factually distinguishable and the majority's reliance on that case is therefore misplaced.

**Balancing**

**{42}** To summarize, I agree with the majority that the length of the delay weighs against the State and the assertion of the right weighs only slightly in Defendant's favor. However, I would weigh the reason for the length of delay only slightly against the State. Further, I agree with the district court's assessment that Defendant "failed to meet his burden of establishing undue and particularized prejudice from his pretrial incarceration" because he did not articulate any "undue" anxiety or concern as a result of the delay. The majority's conclusion otherwise, and its conclusion that Defendant suffered "extreme prejudice," ignores the district court's findings on this issue. Balancing the factors, I would conclude that there was no speedy trial violation where there was no evidence of actual prejudice and the other factors are neutral or weigh only slightly in Defendant's favor at best.

**LINDA M. VANZI, Judge**